MOSES WALKER *et al.*

*v.*

WILLIAM MATTHEWS *et al.*

1. PARTNERSHIP—*proof of.* Mere loose and casual remarks, indefinite in their character, will not, as between the persons themselves, prove a partnership, but one claiming to be the partner of another, so as to participate in a fund claimed to belong to a partnership, should establish that relation by satisfactory evidence.

2. TRUSTEE—*trust funds.* Where a person in debt, at the time conveys lands to another, to be sold and applied to the payment of the debts of the grantor, and the grantee fails to so apply the fund, creditors may subject it to the payment of his debts, by proceeding in equity, and where the grantor is dead, order the administrator to sell the lands and apply the proceeds in due course of administration to the payment of the debts ; but in such a case, no cross bill being filed, it was error to order the lands to be conveyed to the minor heir of deceased.

3. EQUITABLE LIEN—*account of.* Where it appeared that two brothers selected lands, and they were entered in the name of one, and they improved a portion of them, and it appeared that the other had loaned or furnished money to the brother holding the title, and had made improvements on a part of the land, and the other who held the title, conveyed to him the lands to be sold and applied to pay his debts, the grantee held an equitable claim on, and the legal title to, the lands to indemnify him for money, improvements, &c., and the court erred in decreeing the lands to be

sold without protecting his equity in the lands; it being higher than that of the creditors, it should have been first ascertained and satisfied, or at least a prior lien established on the lands, before they were sold.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. CHARLES EMERSON, Judge, presiding.

Mr. W. E. H. BRACKETT, for the plaintiffs in error.

Messrs. WILLIAMS & BURR, for the defendants in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit in chancery, the bill in which sets out in substance, that the complainants (defendants in error) are creditors of James C. Walker, deceased, and sets out the amount due to each, amounting in the aggregate to $4,839.38; that their claims have been allowed by the probate court; that there are several other creditors of the estate who have not yet had their claims allowed, amount not known to complainants, but being, as they believe, some $10,000 or $12,000; that on the 2d day of November, 1857, said Walker conveyed to his brother, Moses Walker, certain described real estate in the county of Ford, in this State, amounting to about 1,400 acres of land, without any valuable consideration, but either in trust to sell and pay the debts of the said James C., or for the purpose of defrauding his creditors; and charges that Moses Walker denies the trust, and prays for a decree setting aside the deed to him, and vesting the title of the lands in Eliza M. Walker, the only child and heir of the said James C., subject to the payment of his debts; and that his administratrix, Caroline E. Walker, be ordered to sell and pay debts.

The answer of Moses Walker denies that the conveyance was made to him without any valuable consideration, or that it was made either in trust to sell and pay the debts of the said James C., or with intent of defrauding his creditors, and sets up that a co-partnership existed between himself and James C. for entering, speculating and operating in lands;

that in pursuance of said partnership arrangement, the said James C. entered in his own name, the lands described in the bill, together with a large quantity of other lands, and received from the respondent $1,153.63, which was used by the said James C. in entering land under said arrangement; that in pursuance of said arrangement, the respondent moved upon and commenced improving the lands described in the bill, which had been entered by said James C. in pursuance of said partnership arrangement, and has since continued to reside on, and give his personal attention to said lands, and the improvements made thereon have been made by him, and paid for, partly by his own labor, in part by money received from said James C., in part by proceeds of the farm, and in part by his own money; that all the lands were entered and purchased with partnership funds, composed of funds advanced by the respondent and said Walker, funds arising from profits made on sales, and fees for entries of lands made for others; that they were equally interested in the lands as copartners, and that the tracts of land described in the bill, conveyed to the respondent, were his equal share of the lands to which he, as copartner, was entitled. The statute of frauds was not set up.

The court below found that the said conveyance to Moses Walker was made without any valuable consideration, and that it was made in trust that the said Moses Walker should sell the lands, and, with the proceeds, pay the debts of the said James C.; and, by decree, cancelled the deed to Moses Walker, and vested the legal title to the lands in the said Eliza M. Walker, subject to the payment of the debts of the complainants, and the other creditors of the said James C., in due course of administration, by the administratrix, and directed that the administratrix proceed to sell the lands for such purpose.

The circumstances under which the deed was made to Moses Walker, and the evidence as to its being in trust, are detailed in the deposition of Mr. Williams. James C. Walker had forfeited a recognizance for $1,000, given in a criminal prosecution against him for forgery, on which Williams was his security.

On the evening of November 2d, 1857, about dusk, a friend of Walker informed Williams that another capias was about to be taken out against Walker; that the bail had been raised to $2,000, and that Walker had better leave. Mr. Williams looked up John R. Smith, a brother-in-law of Walker, and after consulting together, they sent for Walker, and the following, as related by Mr. Williams in his deposition, transpired :

"When we got into the office, I told Mr. Walker what I had heard ; he seemed to be very much agitated, and asked me what I thought he had better do ; I told him I thought he had better fix up his affairs and leave as quick as he could, and I think Mr. Smith told him the same ; I told him that before he left I wanted him to secure me for the moneys for which I was bound for him as his security, amounting in all to about $3,000.   He said he would do so, of course, and said he would do anything I asked him to do.   Asking me what I wanted him to do, I told him I did not want to dictate to him ; all I wanted of him, was, to place sufficient in my hands to enable me to pay what I was bound for, as his surety.   Mr. Smith also told him that he, Walker, owed Smith some money, and Smith was also security for Walker, and he, Smith, wanted Walker to make him safe, which Walker said he would do. Mr. Walker was agitated, a good deal excited, and asked Mr. Smith and myself to advise him as friends, what disposition to make of his affairs ; I told Mr. Walker that I did not suppose he would ever again live in this country, and that he would want his property sold and his debts paid, and the balance of the proceeds sent to him, wherever he should locate, and that in my opinion the best thing he could do was to make a general assignment of all his effects to his brother-in-law, J. R. Smith ; Smith seemed to be unwilling to take the responsibility of accepting the trust. Walker studied awhile, and said he had a plan that he thought would be best, if he thought we, or I, would be satisfied with it, not certain which ; which was, that he would deed to me 960 acres of wild land that he had over in the neighborhood of Lodi, near the Chicago branch of the

Illinois Central Railroad, which I could sell and pay all for which I was bound for him, and pay, if there was a surplus, to Smith, on his indebtedness, and for what Smith was bound for him, and if there was any surplus still, pay it over to him; he said, this being wild land, would not require any personal attention in overseeing; that the balance of his lands over in that neighborhood, being about 1,400 acres, a good deal of which was improved, he would deed to his brother, Moses Walker; that he wanted the land sold, and his debts paid out of the proceeds; that Moses was living on the land and could attend to it, and would have better opportunities of selling it than we would, who lived so far away from it; that he had confidence in Moses' honesty, and that Moses had let him have, or had advanced, or loaned him, either $500 or $600, I am not positive which, and that he had always intended to let Moses have a quarter section of land.  I told him that was perfectly satisfactory to me, and he had better go right to work and fix it up, and he immediately filled out the two deeds, one deeding to me the S. $\frac{1}{2}$ of sec. 15, S. $\frac{1}{2}$ of 21, E. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ 21, W. $\frac{1}{2}$ N. E. $\frac{1}{4}$ of 21, & N. E. $\frac{1}{2}$ of 23, all in town 24, N. of R. 9 E.; and in the other, deeding to Moses Walker about 1,400 acres in the same neighborhood; this was on the 2d day of November, 1857.  Walker, saying his affairs were much involved and mixed up, wanted both Smith and myself to assist all we could in settling up his affairs, which we both promised to do.  I told him that I did not understand his private business matters, and that he had better make out a kind of statement of his indebtedness and means, that we could have it as a kind of guide, and he said he would do so as well as he could then, from memory, and he made out a rough schedule of his debts, amounting to about $16,000, and his assets; he included in his assets 3,130 acres of land, embracing the lands deeded to me, and to his brother Moses, and 490 acres in the vicinity of Tolono, and some 240 acres elsewhere."

The main defense set up in this answer, that Moses Walker was entitled to hold the lands in question, as being his equal

share of the assets of a copartnership in lands between himself and James C. Walker, is not sustained by the proofs. The evidence in support of it consists entirely of loose, general declarations of James C. in casual conversations, to the purport that they were interested together, or as partners, in the lands, and that he intended to convey to Moses a portion of them, defining with no sort of certainty the nature or extent of the interest of Moses in the lands.

Such testimony is altogether too vague and unsatisfactory upon which to change the title to real estate. There is no clear proof that any money of Moses Walker actually went into the purchase of any of the lands, upon which to raise a resulting trust in his favor.

It is assigned as error, that the decree vested the title to the lands in Eliza M. Walker. Had the decree been based upon the ground that the conveyance to Moses Walker was made to defraud creditors, such a provision in it would be manifestly wrong. But it is said here, the court only found that the lands were conveyed in trust to sell, and pay debts, and as the trustee denied the trust, the court might remove him and appoint another trustee, and place the title to the property in his hands, that he might execute the trust.

Admitting such power, the title here was not vested in Eliza M. Walker for such a purpose. She was the infant heir of James C. Walker, and the legal title was vested in her merely to hold. She had nothing to do in executing the trust, but the court undertook to execute the trust by directing Caroline E. Walker, the administratrix, to proceed to sell the lands, prescribing the mode and terms of sale, and that, with the funds arising from the sale, she should pay the debts of James C. Walker. For all the purposes of carrying out the decree, the title might as well have rested in Moses Walker, as in the infant, Eliza M. Walker; and then, in the event of all the lands not being required for the payment of debts, the residue of the lands would have remained in the hands of Moses Walker, where the owner himself had placed them, and

whence they should not have been taken, at the mere instance of creditors, except so far as might be necessary to pay their debts.

In view of the character of the decree, we see no necessity for making the change of title that was made, and think the decree erroneous in that respect; although it would seem to have become practically unimportant, as subsequently to the decree, and before the suing out of the writ of error, all the lands were sold for less than the amount of the debts.

It is manifest from the proofs, that Moses Walker had some equitable claims in respect to these lands, indefinite as they might be. He seems to have spent several years in taking care of the lands, making improvements and performing labor upon them, and rendering other services in regard to them, and expended more or less of his money, apparently, as having a joint interest in them. James C. had, on frequent occasions, said they were partners in the lands, and were farming together. He told Milton Walker that the title of all the lands was in his own name; that he intended shortly to make a change, and deed to Moses a portion of the lands; and he tells Mr. Williams, at the very time of making the deed, that Moses had let him have, or had advanced, or loaned him, either $500 or $600, and that he had always intended to let Moses have a quarter section of land. Had the quarter section been designated with any certainty, he should have been allowed to retain it under this deed.

Considering the circumstances surrounding the execution of this deed, how little any real desire to make a provision for general creditors had to do with the making of it, can there be any doubt that James C. Walker intended that it should be a complete indemnity to his brother Moses? The very nature of the transaction declares as loudly as words could do, that such was the purpose of the deed.

Moses Walker having, indeed, a higher equity than any creditor, in respect to these lands, and holding the legal title, a court of equity should never have taken it out of his hands

until he had first been fully satisfied every equitable claim he had in respect to the lands, or against James C. Walker.

The court, before decreeing a sale of the lands, should have taken an account of all money contributed by Moses Walker toward these lands, of the value of all services rendered in respect to them, and of all money owing to him from James C. Walker, and have given him, to that extent, a prior lien upon the lands for the satisfaction thereof.

The decree is reversed and the cause remanded for further proceedings, not inconsistent herewith.

*Decree reversed.*