THE INDIANA, ILLINOIS AND IOWA RAILROAD COMPANY

*v.*

FREDERICK SWANNELL, EXR. *et al.*

*Filed at Ottawa October 11, 1895.*

1. TRUSTS—*trustee bound by terms of trust so long as he acts.* A trustee for railroad bondholders authorized to purchase at a foreclosure sale under a re-organization scheme, though entitled to abandon the purchase because of the failure of such bondholders to pay assessments, remains bound by the terms of his trust, where he proceeds to complete the purchase as such trustee.

2. SAME—*purchaser with notice takes subject to trust.* Property purchased under a scheme for re-organization of a railroad, by a trustee for bondholders, may be followed by the latter into the hands of a purchaser from such trustee with knowledge of the trust.

3. SAME—*purchaser of trust property with notice becomes a trustee.* A purchaser with notice of a trust, either express or implied, becomes himself a trustee of the property for the beneficiary, and is bound in the same manner as the original trustee, even though he purchases for a valuable consideration.

4. SAME—*beneficiary not bound to look to trustee who sells the property.* The beneficiary in a trust is not bound to enforce an individual liability against a trustee who has disposed of the trust property in an improper manner, but has the alternative remedy of following the trust property.

5. SAME—*release of trustee will not preclude beneficiary from following the trust property.* A release by a bondholder of the trustee in a re-organization agreement from all further duty or liability, and a waiver of all rights attained through or by him, will not preclude such bondholder from following the railroad property purchased by such trustee in his official capacity, and transferred by him, with notice, to another company.

6. SAME—*when money judgment is proper against purchaser of trust property.* Where the company so purchasing with notice from the trustee refuses to comply with a decree directing it to issue bonds as required by the re-organization scheme, in pursuance of which the trustee purchased at a master's sale, a money judgment may be rendered against it, although such purchasing company had given certain stock in consideration of its purchase.

7. SAME—*return of bonds by trustee does not preclude bondholder from following the property.* The return by such trustee to a bondholder, of the latter's bonds, upon an order receipting in full for the bonds and discharging the trustee from all liability, does not release the

equities that such bondholder has in the property purchased by such trustee, and transferred by him to another company.

8. And this is not changed by the fact that such bondholder failed to pay assessments, where the re-organization plan makes no provision for forfeiting the interests of bondholders, but provides that their shares of the purchase money may be borrowed or otherwise provided, and in default of payment within a specified time the interests of such bondholders may be sold.

9. ACTION—*how trust property may be reached by beneficiaries—right to intervene.* All the bondholders who were parties to such re-organization scheme are, in equity, the owners of the property so purchased by their trustee, as tenants in common, and are entitled to relief in a suit by one of them, for himself and others similarly situated, their community of right and interest making it admissible in such case for all the other beneficiaries to come into such suit by intervening petitions.

10. NOTICE—*railroad company chargeable with what its officers know.* A railroad company is chargeable with the knowledge of its president that property purchased by it is impressed with a trust in favor of the holders of bonds issued by the former owner of such property.

*Ind., Ill. & Iowa Railroad Co.* v. *Swannell,* 54 Ill. App. 260, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

The Kankakee and Pacific Railroad Company, being a corporation originally created by and under the laws of the State of Indiana, with power to locate and operate a road from Plymouth, in the State of Indiana, westerly to the boundary line of the State of Illinois, was consolidated with a company organized under the laws of the State of Illinois, the name of the consolidated company being the Plymouth, Kankakee and Pacific Railroad Company, with a capital stock of $2,500,000. Said railroad company proceeded to procure a right of way and partially constructed its railroad, and made large outlays of money for the purchase of material and payment of labor.

On the first day of June, 1871, the Plymouth, Kankakee and Pacific Railroad Company executed 3600 bonds, each for the sum of $1000, due in thirty years, and to secure the same executed a trust deed conveying all and singular its line of railroad and all its property in trust to J. Edgar Thompson and George W. Cass, of the State of Pennsylvania.    Of said bonds 398 were negotiated and sold to various parties.    Thereafter, default in the payment of interest having been made, Samuel T. Hanna and several other bondholders filed a bill on the 25th day of July, 1874, in the United States Circuit Court for the Northern District of Illinois, for the purpose of foreclosing the said trust deed.    On the fourth day of August, 1876, a decree was entered in said cause, which decree provided, among other things, that said railroad company should pay the amount found due on said bonds, and that in default of such payment the property described in the said trust deed should be sold by the master in chancery of said court, and the proceeds of such sale applied to the payment of the bonds and coupons described in said decree.    Thereupon the property covered by said trust deed was, in pursuance of such decree, on the twelfth day of June, 1877, offered for sale by Henry W. Bishop, a master in chancery of said court, the report of the sale of the master, filed June 10, 1878, containing the following statement:    "At which sale Mr. John C. Cushman, trustee for bondholders, bid the sum of $4000, that sum being the highest sum bid for the same, and he being the highest bidder; and I further report that said bid has not yet been complied with, and respectfully ask of the court further directions herein." Prior to the property being offered for sale, a portion of the holders of said bonds had made an arrangement under which said John C. Cushman was to bid in the property for the use and benefit of such of the bondholders as might come in and become parties to such arrangement. Such arrangement contemplated a re-organization, the

issuance of new bonds to the old bondholders, and the payment of a small sum upon each of the bonds to defray the necessary expenses attending upon such arrangement.

No further proceedings were had in said cause until February, 1881, at which time the said Cushman and one Joel D. Harvey filed in said United States Circuit Court their petition, asking that said Cushman be allowed to complete his bid and receive a deed for said property, and on the third day of May, 1881, the said circuit court confirmed said sale to the said Cushman, and ordered the said master to execute and deliver a deed to him of said property, and a deed thereof was on the same day, in pursuance of said order, executed and delivered to said Cushman. On the 11th of July, 1881, said Cushman conveyed said property to appellant, the Indiana, Illinois and Iowa Railroad Company. He took from Harvey, who had become the owner of the greater portion of the bonds for which the foreclosure was had, an indemnifying bond, which, among other things, provided that said Harvey should hold Cushman harmless against all loss, costs, damage and expenses to which said bondholders or any other person might seek to subject him, Cushman, by reason of such conveyance, and to pay all judgments, costs and expenses that might be awarded or rendered against him, Cushman, in any court of final or general jurisdiction in any suit or proceeding growing out of such conveyance, or of his trusteeship for the holder of any bond of the Plymouth, Kankakee and Pacific Railroad Company. In consideration of the conveyance to the Indiana, Illinois and Iowa Railroad Company, Harvey received, according to his testimony, about $150,000 of the stock of a company known as the Western Air Line Construction Company.

Under an order of reference made by the court in the case at bar, the master found that the new bonds which the respective bondholders were to receive by the terms of the re-organization contemplated by the arrangement

under which said Cushman made his bid at the master's sale, would, if they had been issued, be worth thirty-three cents on the dollar,—or, in other words, that if the plan of re-organization had been carried out the bondholders of the Plymouth, Kankakee and Pacific Railroad Company would have received for the bonds which they held other bonds of the same amount, and now actually worth thirty-three cents on the dollar.

The original bill in the case at bar was filed by William G. Swannell, since deceased. His executors, Frederick Swannell and Frederick O. Swannell, have been substituted, pending the litigation, in his place and stead. Said original bill charges that subsequently to the decree of foreclosure in the United States Circuit Court and to the bid of Cushman at the master's sale, and before the confirmation of such sale, said Harvey purchased a large number of said bonds for a nominal sum, and that Cushman and Harvey conspired together to obtain the property and to defraud Swannell, who filed the bill as a holder of some of the bonds secured by said trust deed, and also to defraud other holders of said bonds of their proportion in the said property mortgaged as aforesaid. The bill charges that at the time Cushman conveyed the property, as aforesaid, it was of sufficient value to pay the bonds of Swannell and the other bondholders in full, but that complainant never received anything from the proceeds of said sale. The suit was brought by Swannell on behalf of himself and other holders of the bonds similarly situated who might desire to become parties and share the benefits of the suit. The prayer of the bill is that the title acquired by Cushman shall be declared to be in trust for all the bondholders, and that the conveyance from Cushman to the Indiana, Illinois and Iowa Railroad Company shall be charged with the same trusts and to be held in trust for Swannell and the said other bondholders, and that the said railroad company shall be decreed to deliver new bonds in equal amounts, according

to the plan of re-organization. And the bill contains also a prayer for general relief.

During the progress of the cause various intervening petitions were filed,—one by Patrick Dore, the owner of seven of the bonds; another by Samuel W. Strong, owner of three of the bonds, and still another by Henry M. Hooker, the owner of twenty-five of the bonds. The original bill and the intervening petitions were all referred to a master in chancery to take testimony and report the same, together with his findings and conclusions, to the court. The master reported in favor of granting relief upon the original bill in favor of Frederick Swannell and Frederick O. Swannell, executors of the last will and testament of William G. Swannell, deceased, but he recommended that relief be denied upon the intervening petitions of Dore, Strong and Hooker, respectively. The circuit court of Cook county sustained the exceptions of Dore to the report of the master, and overruled those of Strong and Hooker, respectively, to said report, and thereupon said court entered a final decree that Frederick Swannell and Frederick O. Swannell, executors of William G. Swannell, deceased, recover of the Indiana, Illinois and Iowa Railroad Company the principal sum of $825, with interest thereon at six per cent per annum from October 25, 1891, such interest amounting to $96.80, and the total of principal and interest amounting to $921.80, and that they have execution therefor; that Patrick Dore recover of said Indiana, Illinois and Iowa Railroad Company the principal sum of $2310, with interest thereon at six per cent per annum from October 26, 1891, such interest amounting to $271, and the total of principal and interest amounting to $2581, and that he have execution therefor; and that the petitions of Samuel W. Strong and Henry M. Hooker, severally and respectively, be dismissed.

From the decree thus rendered the Indiana, Illinois and Iowa Railroad Company, Samuel W. Strong and

Henry M. Hooker each appealed to the Appellate Court for the First District, and assigned errors, and such proceedings were had in the Appellate Court as that the decree of the circuit court was reversed and the cause remanded to that court with directions to enter a decree in favor of Samuel W. Strong, against the Indiana, Illinois and Iowa Railroad Company, for thirty-three cents on the dollar of the par value of three bonds of $1000 each, less the sum of $12, being for the sum of $978, with interest thereon at five per cent per annum from the 21st day of October, 1891; and to enter a decree in favor of Henry M. Hooker, against the Indiana, Illinois and Iowa Railroad Company, for thirty-three cents on the dollar of the par value of twenty-five bonds of $1000 each, less the sum of $225, with interest at five per cent per annum, being for the sum of $8025, with interest thereon at five per cent per annum from the 21st day of October, 1891; and to render decrees in favor of the executors of Swannell, and said Dore, respectively, for the principal amount severally found for said executors and for the principal amount severally found for the said Dore, with interest thereon, in each case, at the rate of five per cent per annum from the 21st day of October, 1891, instead of the rate of six per cent per annum as directed by the decree appealed from. And the Appellate Court also made an order in regard to the apportionment and taxing of the costs of that court. The Indiana, Illinois and Iowa Railroad Company now prosecutes this appeal from the order and judgment of the Appellate Court.

WALKER & EDDY, for appellant:

We do not think that under this record it can be fairly held that the inadequacy of price was, of itself, notice that this property was purchased by Cushman in trust for the bondholders. Wade on Notice, sec. 24.

In this State it is held that the word "trustee" attached to a name is merely descriptive, and does not

limit liability or authority, and is not notice of a trust. *Powers* v. *Briggs*, 79 Ill. 493; *Allen* v. *Woodruff*, 96 id. 24.

A purchaser is protected against secret trusts or equities of a former owner.    *McDaid* v. *Call*, 111 Ill. 304.

Where one purchases at a judicial sale he will be protected, if the record shows jurisdiction of parties and subject matter, and a valid judgment or decree and execution of the same, whatever errors may intervene in the proceedings.    *Goudy* v. *Hall*, 36 Ill. 313; *Hobson* v. *Ewan*, 62 id. 146.

We may, if we choose, run the risk of there being jurisdictional defects; and if we do not, in fact, search the court records, we are not affected with notice of what they contain.    *Choteau* v. *Jones*, 11 Ill. 300; *Anthony* v. *Wheeler*, 130 id. 128; *Bourland* v. *County of Peoria*, 16 id. 538; *Betser* v. *Rankin*, 77 id. 289; Wade on Notice, (2d ed.) sec. 95.

The rule requiring a purchaser of property held upon trust to see to the application of the purchase money among the *cestuis que trust*, does not apply where the trustee has express or implied power to receive the consideration for the sale on behalf of the *cestuis que trust*.    Perry on Trusts, secs. 791-793.

Thomas P. Bonfield, and George W. Cass, for appellees :

The railroad company must be held to have had at least constructive notice of what appears in its chain of title.    *White* v. *Kibby*, 42 Ill. 510.

There was enough in the record of that case to put a prudent person upon inquiry, and that is, in law, equivalent to notice.    *Doyle* v. *Teas*, 4 Scam. 202; *Merrick* v. *Wallace*, 19 Ill. 486; *Morrison* v. *Kelly*, 22 id. 610; *Morris* v. *Hogle*, 37 id. 150; *Railroad Co.* v. *Kennedy*, 70 id. 350; *Chicago* v. *Witt*, 75 id. 211; *Anthony* v. *Wheeler*, 130 id. 128.

The railroad company acquired no greater or better title than Cushman had, because it had full knowledge

of the exact nature of the Cushman title so acquired. It simply stepped into Cushman's shoes, and Swannell has the right to follow the property into the hands of the railroad company, his new trustee. 2 Pomeroy's Eq. 688; Bispham's Eq. sec. 263; *Prettyman* v. *Wilkey*, 19 Ill. 235; *Turpin* v. *Railroad Co.* 105 id. 11; *Phillips* v. *South Park Comrs.* 119 id. 628; *Insurance Co.* v. *Slee*, 123 id. 57.

DENT & WHITMAN, for appellee Patrick Dore :

In its principal features, and as to the right of recovery against some of the defendants, this case is like *Cushman* v. *Bonfield*, 139 Ill. 219. As said in that case: "The trust * * * was impressed upon and followed the title."

A purchaser from a trustee with notice, though for a valuable consideration, *a fortiori* a volunteer taking with ·notice, is in equity bound by the trust to the same extent and in the same manner as the person from whom he purchased. Hill on Trustees, 164; *Bank* v. *Seton*, 1 Pet. 299; 2 Mad. Ch. 125; 1 Sch. & Lef. 262.

Some question is made whether *Cushman* v. *Bonfield*, 139 Ill. 219, is authority for the decree. It is submitted that it is such authority, for there was a right of election either to hold Cushman and Harvey, or to follow the property and hold the purchaser from Harvey to be a trustee. Hill on Trustees, 509.

THOMAS P. BONFIELD, and G. FRANK WHITE, for appellees Samuel W. Strong and Henry M. Hooker:

Courts have repeatedly interfered and exercised jurisdiction where the individual claims were not only legally separate, but were separate in time, and each arose from a separate and distinct transaction, because there was a community of interest among all the claimants in the question at issue and in the remedy. In support of this doctrine we call the attention of the court to *Railroad Co.* v. *Schuyler*, 17 N. Y. 590; *Beach* v. *Schrere*, 3 Halst. Ch. 440;

*Langdon* v. *Railroad Co.* 37 Fed. Rep. 449; *Walker* v. *Matthew*, 58 Ill. 196; Pomeroy's Eq. Jur. sec. 269.

If a defendant answers, the expense is in a great measure incurred, and it will be too late for him to complain when he suffers the cause to proceed to a hearing. *Henderson* v. *Cummings*, 44 Ill. 325; *Labadie* v. *Hewitt*, 85 id. 341; *Briggs* v. *Sperry*, 95 U. S. 405.

For any new matter brought into a bill the objection to it must be raised by demurrer for multifariousness, or it is waived. *Briggs* v. *Sperry*, 95 U.S. 405; *Henderson* v. *Cummings*, 44 Ill. 325; *Nelson* v. *Hill*, 5 How. 132.

Mr. Justice Baker delivered the opinion of the court:

There being some differences in the particular circumstances of the cases made by the executors of Swannell and those made by Dore, Strong and Hooker, respectively, the merits of the case made by each may, to some extent, properly and conveniently be separately considered,—and this may be done without repeating, in respect to each of the cases, facts and rules of law or equity that are stated in regard to one case and that are equally applicable to the cases of some or all of the other appellees.

*First*—It seems to us that three questions, only, arise in regard to the decree in favor of the Swannells. They are these: Did John C. Cushman hold the title to the property, at the time he conveyed it to appellant, as trustee for William G. Swannell and other bondholders? Did appellant acquire such title from Cushman with notice of this trust, and therefore take the same subject to the equities of Swannell? Was it proper to render a money decree in favor of the executors and against appellant?

John C. Cushman, at the sale made by the master in chancery under the foreclosure decree in the Circuit Court of the United States for the Northern District of Illinois, bid in all the property of the Plymouth, Kankakee and Pacific Railroad Company as trustee for the bondholders,

157—40

and he made such purchase in pursuance of a trust agreement made previous to the day of said master's sale, between him and the holders of 383 bonds out of 398 bonds of said railroad company. In this trust agreement there was embodied a plan of re-organization, whereby the old bondholders were to receive bonds in a new company to be organized by the said Cushman and to be secured on the same property, such bonds to be issued to the extent of $23,000 per mile, the old bondholders simply obligating themselves to pay to said trustee, when called upon, their proportions of the expense and costs incurred in the foreclosure proceeding and in the organization of a new company in the manner provided by the terms of said trust agreement. Nearly all the bondholders signed this trust agreement previous to the sale, and although Cushman bid off the property at the master's sale as trustee for the bondholders, it appears that a majority of the original holders of said bonds afterwards failed to pay the assessments made upon them for their respective proportions of the costs of the foreclosure sale and re-organization, and it is therefore claimed by appellant that the said Cushman was absolved from the obligation and burden assumed by him under the terms of said trust.

Cushman had a right to abandon the sale and to refuse to complete the same because of the failure of a sufficient number of bondholders to respond to his call for their shares of the assessment. This would have left the mortgaged property still under the lien, and subject to the equities of Swannell and the other bondholders. A re-sale could have been had under the decree, and the value of the property thereby applied in payment of their demands. But having, however, bid off the property as trustee for Swannell and others, and having proceeded to complete the purchase made by him as their trustee, he must be held to be absolutely bound by all the terms of said trust until released therefrom by the appellee Swannell and the other bondholders. Swannell entered

into this trust agreement and delivered his bonds to Cush-
man. He paid all assessments made upon him by Cush-
man, as such trustee, and the money so paid by Swannell
to Cushman was, actually and in fact, retained and used
by Cushman to make up the sum of money necessary to
complete the purchase made by him at the master's sale,
and Swannell never withdrew his bonds or received back
from Cushman any portion of the assessments paid to
him as trustee to perfect such sale, and never, in any
manner, released Cushman from any of the duties or obli-
gations imposed upon him by the trust agreement entered
into between them prior to the day of said master's sale.
Cushman could not, therefore, divest himself of any of
the obligations imposed by said trust agreement without
Swannell's consent.

The matter of the relation existing between John C.
Cushman and Joel D. Harvey, respectively, and the bond-
holders who had placed their bonds in the hands of
Cushman, was before this court in *Cushman* v. *Bonfield*,
139 Ill. 219. We there held that Cushman had bid off the
property, rights and franchises of the Plymouth, Kanka-
kee and Pacific Railroad Company as trustee of such bond-
holders, and that the trust created was impressed upon
and followed the title which was subsequently perfected
in Cushman by the execution of the master's deed made
in pursuance of such sale, and continued up to the time of
the conveyances by which the railroad property became
vested in the Indiana, Illinois and Iowa Railroad Com-
pany; and also held that it was fairly to be inferred from
the terms of the indemnity bonds given by Harvey to
Cushman at the time the latter conveyed the property to
the Indiana, Illinois and Iowa Railroad Company, as well
as otherwise clearly shown by the evidence, that Harvey
had full knowledge of the trust reposed in Cushman and
of the equitable interests of Bonfield and the other bond-
holders in the property, and that said Harvey having in
his possession the proceeds of trust property, the law

charges him, also, as trustee, and holds him accountable as such. And we may here add, that the case appearing in this record in favor of Swannell is in all respects like the case made out for Bonfield in the former litigation, the only substantial difference being, that there the relief was granted against Cushman and Harvey, personally, while here the decree went against the appellant corporation.

This brings us to the question whether the Indiana, Illinois and Iowa Railroad Company had notice of the trust, and of the restrictions and limitations upon the title of Cushman, at the time that it received the conveyance of the property from him. The record shows that said railroad company was organized on July 8, 1881; that it was organized by Harvey for the express purpose of receiving from Cushman title to the property, rights and franchises of the Plymouth, Kankakee and Pacific Railroad Company, and that on July 11, 1881,—three days after its organization,—Cushman made to it a quit-claim deed for the same, and on the day the deed was given Harvey executed to Cushman an indemnifying bond in the sum of $60,000, conditioned that he would hold Cushman harmless against all loss, cost, damage or expense to which the bondholders of the Plymouth, Kankakee and Pacific Railroad Company, or any of them, or any other person or persons, may seek to subject him by reason of the conveyance, and pay all judgments, costs and expenses incurred, awarded or rendered against him in any suit or proceeding growing out of the conveyance or his trusteeship for the holders of any of the bonds of said Plymouth, Kankakee and Pacific Railroad Company.

From the date of the organization of appellant, and at the time Cushman executed to it the quit-claim deed for the trust property, and for many years thereafter, Harvey was a stockholder in and director of the company, and its president. That Harvey had full—even plenary—knowledge of the trust that was imposed upon

Cushman, appears so clearly and in so many different ways in this record that it is useless to waste time in mentioning them. The knowledge of a person who is a director of a corporation and its chief executive officer must be regarded as actual notice to the corporation itself. In no better way can notice be imputed to it. The company, then, must be considered to have taken the property covered by the trust with full knowledge of the trust imposed upon it. It had ample notice of the rights and equities of Swannell and the other bondholders, and it cannot now be heard to say that it is an innocent purchaser of the property for value. It took its title under the Cushman conveyance charged with all the conditions and limitations imposed upon it by the trust agreement between Cushman and the bondholders for whom he undertook to act. The railroad company simply stepped into Cushman's shoes, and Swannell has the right to follow the property and hold the company as his trustee. The doctrine is, that a purchaser with notice of a trust, either express or implied, becomes himself a trustee for the beneficiary with respect of the property, and is bound in the same manner as the original trustee from whom he purchased,—and this even though he is a purchaser for a valuable consideration. 2 Pomeroy's Eq. Jur. sec. 688; 27 Am. & Eng. Ency. of Law. pp. 251, 265; *School Trustees* v. *Kirwin*, 25 Ill. 73; *Fast* v. *McPherson*, 98 id. 496; *Cushman* v. *Bonfield*, 139 id. 219; *Union Mutual Life Ins. Co.* v. *Slee*, 123 id. 57; *Phillips* v. *South Park Comrs.* 119 id. 626.

The remaining question in regard to the Swannell claim has reference to the propriety of a money decree against appellant for the value of bonds such as should have been issued according to the terms of the trust agreement. The circuit court first entered an interlocutory decree that appellant, within sixty days from the date of such decree, execute and deliver bonds such as called for by the original plan of re-organization, secured by mortgages as therein provided; but appellant failed

and refused to comply with the requirements of such decree, and thereupon the court entered a final decree against appellant for the value of such bonds, as shown by the report of the master and the evidence reported therewith, together with interest from the date of the report, and awarded execution therefor and for costs, as upon a judgment at law.

Harvey received, as consideration for the transfer of the property, rights and franchises of the Peoria, Kankakee and Pacific Railroad Company to the Indiana, Illinois and Iowa Railroad Company, paid up stock to the amount of $150,000 in the Western Air Line Construction Company, a corporation formed under the laws of the State of Iowa for the purpose of completing the construction of the railroad in question. According to the testimony of Meckling, an experienced railroad builder, who went over the railroad in 1880 or 1881 at Harvey's request, he and said engineer agreed that the property in its then condition, as left by the Peoria, Kankakee and Pacific Company, was of the value of $900,000. It appears from the testimony of Harvey that the original capital stock of the construction company was $1,000,000; that he got $150,000 of this stock, paid up, for the property of the old railroad company, and that the other parties in interest paid for the residue of the stock in cash, and that said stock was then worth its par value, but it has since so declined in value as that there have been some sales of it as low as eight cents on the dollar. It would be inequitable and unjust, and a destruction of the contract rights of the bondholders, to now compel them to receive in satisfaction of their claims their respective proportionate shares of said $150,000 construction company stock that is now almost worthless, on the ground that in the plan of re-organization there was direct authority to the trustee to sell and transfer all the right, title and interest in the property of every bondholder becoming a party to such plan of re-organization, and

under that authority it was sold and transferred to appellant for $150,000 in construction company stock. The power authorizing the trustee to sell and transfer, "providing he shall deem it for our interest to make such transfer," was coupled with the provision that he should "receive for us, in exchange therefor, such securities as are provided by the plan of re-organization hereto annexed, for our respective interests in the property purchased." And the securities for which provision was made in the plan of re-organization were that the bond-holders should receive new bonds for the principals of their old bonds, secured by a first mortgage on the railroad property, not exceeding $23,000 per mile of the main track, and second mortgage or income bonds for the coupons and accrued interest due on their existing first mortgage bonds.

It is suggested that in *Cushman* v. *Bonfield, supra,* it was, in effect, held that the purchase price received by Harvey as the value of the property at the time of the conversion was a trust fund, to be held for distribution among all the bondholders in accordance with their respective equities, and the intimation seems to be that that case is an authority that the particular relief granted in this case is improper. The *Bonfield case* establishes that a personal decree against Harvey and Cushman was proper relief for a court of chancery to grant, but it was not there held that it was the only relief admissible under the circumstances of the transaction. The beneficiary in a trust is not bound to enforce an individual liability against the trustee, for he has the alternative remedy of following the trust property. (*Bradley* v. *Luce,* 99 Ill. 234; *Long* v. *Fox,* 100 id. 43; *Breit* v. *Yeaton,* 101 id. 242; 27 Am. & Eng. Ency. of Law, p. 261, and authorities cited in note 4.) In the *Bonfield case* the chancellor granted one mode of relief, while in this case he allowed appellees to follow the property into the hands of appellant.

*Second*—In the matter of the intervening petition of Patrick Dore, it appears that Dore, the owner of seven bonds, became a party to the trust agreement on November 21, 1876, and duly executed and delivered to Cushman a power of attorney authorizing him to act in respect to said bonds in purchasing the property and disposing of the same; that he delivered said bonds to Cushman, and paid to him the two assessments called for, to be used in perfecting title in Cushman for the benefit of the bondholders, said assessments amounting to $35 and $28, respectively, and Cushman testifies that this money so received "was used in the costs and expenses of the foreclosure proceedings in the United States court." The sole and only difference between the case of Dore and that of Swannell is, that on July 9, 1881, Cushman handed back to Dore his seven bonds, and took from him a receipt and discharge which reads as follows:

"CHICAGO, ILL., *July 9, 1881.*

"I have this day received from John C. Cushman seven first mortgage bonds of the Plymouth, Kankakee and Pacific Railroad Company, numbered 440, 441, 443, 444, 445, 448 and 449, with interest coupons thereto attached, numbered from 6 to 60, inclusive. And I hereby release said Cushman from all further duty or liability in connection therewith as my attorney or representative, and agree to hold him harmless therein, and waive all rights that I may have attained through or by him."

It appears that Cushman tried to induce Dore to assign his interests to Harvey for $413, but that Dore refused to accept the offer, saying he would rather lose it all. Cushman told him that he had nothing more to do with the road,—that he could do nothing more for him, and for him to go and see Harvey, and gave him Harvey's address. Thereupon Dore demanded his bonds, and they were delivered to him upon his signing the receipt in question. It is manifest from the evidence that when he

received his bonds back from Cushman, on July 9, 1881, it was his intention and purpose to insist upon his rights and claim his interest in the property covered by the decree of foreclosure. Even if effect can be given to the release from further duty and from liability, and to the waiver of rights embodied in the receipt, yet such release and waiver do not affect the equitable rights enforced by the decree herein. The relief granted by the court is not a personal decree against Cushman, and is not an enforcement of his personal liability as trustee, and the rights which the decree enforces are not rights or equities which Dore obtained by or through Cushman, but rights and equities which were vested in Dore under and by virtue of the mortgage and decree of foreclosure. Wipe out the bid of Cushman and the acts done by him, yet the equities of Dore in the property of the Plymouth, Kankakee and Pacific Railroad Company still exist, and the fact still remains that appellant has converted that property to its own use with full notice and knowledge of such equities.

The difference between the case of Samuel W. Strong and that of Dore is this: both the assessments paid by the latter were used in perfecting the title in Cushman, while of the two assessments paid by Strong, one, that for $15, was so used, while the other, $12, was returned to Pearre, the agent of Strong. The circumstances under which this was done may be stated. Strong gave to Pearre a written order, as follows:

"You will please deliver to L. G. Pearre, Esq., on presentation of this order, which shall be your receipt in full and a complete discharge from all liability, three first mortgage bonds of the Plymouth, Kankakee and Pacific Railroad Company, being numbers 426, 427 and 366, for $1000 each, and coupons thereto attached, together with the power of attorney authorizing you to act as trustee to represent said bonds."

Cushman swears that he drafted this order, and that Strong had frequently talked with him, and knew that the plan of re-organization had completely failed. Of course, the discharge from liability in this order did not work the result of releasing the equities that Strong, as a bondholder, had in the property and under the decree.

If it be urged that the Swannell suit was brought only on behalf of himself and such other holders of the bonds of the Plymouth, Kankakee and Pacific Railroad Company as are similarly situated, and that said suit proceeds directly upon the theory of the trust agreement made between Cushman and the bondholders, and that therefore these general equities of Dore and of Strong in the railroad property and under the decree of foreclosure do not arise and are not involved in the original suit of Swannell, and consequently not here enforcible, we may say, that we regard what is hereinafter said in respect to the intervening petition of Henry M. Hooker, and in respect to the cases made on the petitions of Dore and of Strong, as conclusive against any such suggestions or result.

It appears that the Third National Bank of Chicago formerly held the twenty-five bonds which its receiver afterwards sold to Hooker and which Hooker now owns. The bank was a party to the trust agreement, and gave to Cushman a power of attorney authorizing him to purchase the railroad property at the master's sale for its benefit, and to receive for it new bonds in a re-organized company, and delivered to him said twenty-five bonds. Cushman, on January 12, 1877, acting under the trust agreement, bid $4000 for the property at the master's sale, that being deemed sufficient to pay costs and expenses, and it was struck off to him as trustee of the bondholders. He bid in the property for the benefit of the bank as well as for the benefit of other stockholders. Neither of the two assessments made on the bank was paid, either by the bank or the receiver. Quite a considerable time

thereafter Cushman returned the bonds and the power of attorney to the receiver.

There was no rescission of the trust agreement, either as to the assignor of Hooker or Strong or Dore. Neither the return of the bonds and the powers of attorney to the receiver of the bank, to Strong and to Dore, respectively, nor the restitution to Strong of the $12 received for the last assessment, nor the failure of the bank and its receiver to respond to assessments, nor the release and discharge contained in the order signed by Strong, nor the release and the waiver of rights embodied in the receipt of Dore, worked such a rescission as to the rights and interests of either of the interveners. It is a fundamental condition of the law governing the rescission of contracts, that the parties must be restored to their original positions as nearly as possible. Cushman could not retain his bid made in his capacity of trustee of Dore, Strong, the bank and other creditors, and his claim upon the property of the railroad company obtained by means of the powers of attorney and the trust agreement, and yet successfully maintain that the contract and agreement between him and said bondholders were rescinded and the trust relations existing between him and them at an end. He could not shake off the trust without abandoning his bid and all claim to the property. This he did not do, but procured a confirmation of the sale to himself, and a vesting in himself of the title to the property which was the subject of the trust. If he had thrown up his bid and abandoned all claim to the property, then these intervening bondholders, and the other bondholders in whose interest the mortgage was foreclosed, could readily have procured a re-sale of the property and the application of the proceeds of such sale in payment of their bonds.

The plan of re-organization and the powers of attorney defined the relations between the holders of the bonds and Cushman, and gave Cushman whatever interest he had in the property, and whatever power he had in the

event any of the bondholders failed in making payment of assessments for costs, expenses and fees. This plan of re-organization and these powers of attorney made no provision by virtue of which Cushman could forfeit the rights and interests of any of, the bondholders who were parties to the trust agreement. The authority given to enforce payment of assessments is carefully and specifically pointed out in item 4 of the plan of re-organization. It is there provided that the trustee may borrow the *pro rata* shares of bondholders who fail to pay their shares of the purchase money, "or any other person may provide the same, and any sum so borrowed or provided for such purpose shall be repaid, with interest at the rate of ten per cent per annum, by the bondholders for whose benefit it was borrowed or provided, before he shall be entitled to receive any bonds or other proceeds of such sale from said trustee; and should such sum, with interest, remain due and unpaid for one year from the date of its advancement, said trustee shall, upon demand by the party making such advance, sell the interest of said bondholders in the proceeds of said sale at public auction, giving ten days' notice thereof in some daily newspaper of the city of Chicago of the time and place of sale, to the highest bidder thereof, for cash, and after paying costs of such sale and the money and interest thereon before advanced, said trustee shall pay the residue, if any, to said bondholder or his legal representative on demand."

It is claimed that the equities of Dore, Strong and Hooker are not the same as the equitable rights of Swannell, and that therefore they cannot come in under his bill and are not entitled to the same relief. We think that the gist of the original bill is the relation of trustee and *cestuis que trust* that existed between Cushman and the bondholders by virtue of the powers of attorney and the plan of re-organization, the violation of the trust, and the transfer of the property, with notice, to appellant. All the bondholders who were parties to the trust

agreement had a beneficial interest in this property—were in equity the real owners of it, and in equity to be regarded as tenants in common. The differences between the cases of Swannell, Dore, Strong and Hooker we regard as simply differences in the immaterial circumstances of each particular case. There is such a community of right and interest among the appellees in the question at issue and in the remedy, as makes it admissible that the intervening petitioners should come in under the original bill of Swannell. Pomeroy's Eq. Jur. sec. 269; *Walker* v. *Mathew*, 58 Ill. 196; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 17 N. Y. 590.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*