Providence,
 

 Durbee, C. J.
 

 This is a suit in equity by Richard Gr. Watson, a son and one of the heirs at law of Elisha Watson, Jr., late of South Kingston, deceased, against said Elisha’s widow and the other heirs, and against the administrator on his estate. The bill sets forth that Susan Watson, a former wife of Elisha, died May 7, 1834, intestate, and the owner of an undivided moiety of the Burke Farm, so called, in South Kingston. She left her husband and two children by him, to wit, the complainant and Henry C. Watson, then infants, surviving her. Elisha Watson, Jr., was subsequently appointed guardian of the two children, and as such was authorized by the General Assembly, at its January session in 1842, to sell all their right, title, and interest in the Burke Farm, under the advice and direction of the Court of Probate of South Kingston, first giving bond with surety, to make the sale according to the direction of said court, and to invest the proceeds in other real estate or productive property for the benefit of the
 
 *472
 
 children after his decease, be being entitled, as tenant by the curtesy, to the use and income of the property during his life. Elisha Watson, Jr., accordingly sold the Burke Farm under the direction of the court, first giving bond as directed. He received $2,000 for the half in which his children were interested. Subsequently, in 1843, he purchased a farm, called the Bentley Farm, at or near Narragansett Pier, in South Kingston, containing about one hundred and eighty-three acres, for which he paid the sum of $8,250. The bill alleges that the $2,000, proceeds of the sale of said one half of the Burke Farm, were used in making up said sum of $8,250, and were invested by Elisha Watson, Jr., in the Bentley Farm for the benefit of his children after his decease. We think the evidence shows that the $2,000 were used in the purchase of the Bentley Farm. After 1843, Elisha Watson, Jr., sold and conveyed to different persons many different parcels of the Bentley Farm, until, at the time of his decease he had reduced the farm to between fifty and sixty acres, a part of which he had mortgaged. He died May 31, 1877, deeply insolvent. Henry C. Watson had died before him, December 9, 1863, being childless and unmarried. The bill alleges and claims that the complainant succeeded to the interest of Henry C. Watson in the Bentley Farm as his sole heir at law. The bill also alleges and claims that the part of the Bentley Farm remaining unsold was reserved by Elisha Watson, Jr., for the complainant, as his equitable part thereof. The prayer is, that a decree may be entered vesting the title of the remaining part, or of so much thereof as he is equitably entitled to, in the complainant.
 

 The case presents two questions, to wit: 1. Did the complainant succeed to his brother’s interest in the Bentley Farm, if any he had, as sole heir at law ? 2. Is the complainant entitled to relief under his bill; and if so, to what relief ?
 

 1. Our statute, Gen. Stat. K. I. cap. 176, § 1, provides that where any person, having title to any real estate of inheritance, dies intestate without children, it shall descend to his father. If the interest of Henry O. Watson in the Bentley Farm was governed by this provision, it descended not to his brother, the complainant, but to his father, Elisha Watson, Jr., as his sole heir at law. The complainant contends that the course of descent was governed, not by § 1, but by § 6. The latter section deter
 
 *473
 
 mines the course of descent where the estate came to the intestate by descent, gift, or devise from the parent or other kindred of the intestate, and provides that in such case, if the intestate die without children, “ such estate shall go to the kin next to the intestate, of the blood of the person from whom such estate came or descended, if any .there be.” If this provision governed, then the interest of Henry C. Watson in the Bentley Farm descended to his brother, the complainant, as his sole heir at law. We think the provision did not govern, for the reason that the Bentley Farm did not come to Henry C. Watson by descent, gift, or devise from his parent or other kindred.
 

 The complainant contends that inasmuch as his brother’s interest in the Burke Farm would have descended to him if it had remained unsold, therefore his brother’s equitable interest in the Bentley Farm, into which the interest in the Burke Farm was converted, must follow the same course of descent. We do not think the conclusion is legitimate. If Henry C. Watson had kept his interest in the Burke Farm until he reached his majority, and then had sold it and had invested the proceeds in the Bentley Farm, there can be no question that the course of descent would have been determined by § 1, and not § 6, of cap. 176. Now, though he did not sell the Burke Farm, his guardian sold it for him, and invested the proceeds in the Bentley Farm; and if therefore the guardian had authority to sell, which is not denied, the same result logically must follow as if he had sold and reinvested the proceeds himself. The complainant contends that his right to inherit was a right of property of which he could not be constitutionally deprived by a sale under the authority of the General Assembly. This is a mistake. A right of inheritance is not a vested right. It is a mere expectancy, dependent on the statute, and subject to the will of the legislature. Cooley’s Constit. Limit. *359, *360. We think, therefore, that the complainant is not entitled to relief in this suit to any extent as the heir at law of Henry C. Watson.
 

 2. The second question is, Is the complainant entitled to any, and if any, to what, relief ? The defendant contends that the complainant is not entitled to relief, because Elisha Watson, Jr., did not invest the $2,000 which he received from the sale of the Burke Farm in the purchase of the Bentley Farm, for the
 
 *474
 
 benefit of the complainant and bis brother, but solely for his own benefit, having borrowed it for that purpose, and that subsequently, after the complainant came of age, he settled with him for it, fully repaying him. In support of this view, a good deal of evidence was submitted; but we are not satisfied that the money was ever repaid. Elisha Watson, Jr., was entitled to the use or income of it during his life, and therefore no inference of payment can be drawn from mere lapse of time. And as to the point that he borrowed the money, the answer is, that he could not borrow it from anybody but himself, his wards having no capacity to lend it; and it is settled that if a guardian uses the money of his ward in the purchase of real estate, a trust will result to the ward-, and the ward has his election either to have the estate conveyed to him, or to have the money repaid with interest. Perry on Trusts, §§ 127, 128.
 

 It is contended that no trust resulted in favor of the complainant, because the Bentley Farm was paid for in part only out of the proceeds of the Burke Farm. We do not think this position is tenable. On the contrary, it is now well settled, that if land is conveyed to a person who pays for it partly out of his own funds and partly out of funds which he holds in trust for another, a trust will result to the other in proportion to his interest in the funds employed.
 
 Botsford
 
 v. Burr, 2 Johns. Ch. 405 ;
 
 Pinney
 
 v. Fellows, 15 Vt. 525;
 
 Buck
 
 v.
 
 Swazey,
 
 35 Me. 41; Perry on Trusts, § 132. The rule goes even farther, and holds that if a trustee purchase an estate with trust funds, adding funds of his own, a trust will result to the
 
 cestui que trust,
 
 and the burden will be on the trustee to show the amount of his own funds, or otherwise the
 
 cestui que trust
 
 will take the whole.
 
 Russell
 
 v.
 
 Jackson,
 
 10 Hare, 204,
 
 214; McLarren
 
 v.
 
 Brewer,
 
 51 Me. 402 ;
 
 Seaman
 
 v.
 
 Cook,
 
 14 Ill. 501, 505.
 

 The price paid for the Bentley Farm was $8,250. Of this, $1,000, being four thirty-thirds of the whole sum, belonged to the complainant, subject to a life interest in Elisha Watson, Jr. It follows that the equitable fee of an undivided four thirty-thirds of the Bentley Farm resulted to the complainant, subject to a life estate in Elisha Watson, Jr., the moment the farm was conveyed to Elisha Watson, Jr. If Elisha Watson, Jr., had kept the farm entire until his decease, then the complainant, un
 
 *475
 
 less bis claim were in some way impaired, would bave been entitled to a conveyance of an undivided four tbirty-tbirds of tbe farm.
 

 We bave seen that Elisba Watson, Jr., did not preserve tbe farm entire, but sold and conveyed away tbe larger portion of it. Wbat effect bad tbis on tbe equitable interest of tbe complainant ? We think it is perfectly clear that every time Elisba Watson, Jr., sold and conveyed away any part or parcel of tbe Bentley Farm, be sold and conveyed away the complainant’s equitable interest in that part or parcel, provided tbe grantee was a purchaser for value and without notice, and that after every such sale and conveyance there remained for tbe complainant in tbe farm only bis resulting trust in an undivided four tbirty-tbirds of wbat was left. Tbe complainant seems to suppose that, having lost bis resulting interest in wbat was sold, be can bave tbe loss made good to him by a proportional increase of interest in wbat is left. But tbis surely cannot be so. His interest was inherent in every part. As soon as any part was sold his interest in that part was converted into an interest in tbe price received for it. It remained a resulting trust or equity in tbe price, or in tbe property in which the price was invested, so long as it could be traced specifically ; and when it ceased to be specifically traceable, it became simply a personal debt or demand to be recovered of Elisba Watson, Jr., or out of bis estate, like any other personal debt or demand.
 
 Thompson's
 
 Appeal, 22 Pa. St. 16.
 

 Tbe complainant submits testimony to show that tbe part of tbe Bentley Farm remaining unsold was reserved for him, or for him and bis brother. We do not think tbe testimony can bave any effect. A resulting trust arises by operation of law tbe instant tbe estate passes, and is not subject to change afterwards by any mere oral declaration. Perry on Trusts, § 133.
 

 Tbe complainant also submits testimony to show that Elisha Watson, Jr., made a written declaration that tbe part remaining belonged to him and bis brother. Tbe testimony comes from him and bis wife. Tbe wife simply testifies that Elisba Watson, Jr., once read to her a writing wbieb declared that tbe money belonging to tbe complainant and bis brother was invested in tbe Bentley Farm. She does not say that it declared
 
 *476
 
 that any particular part was reserved for them. The complainant’s testimony is more to the point; but it is objected to, and we are entirely clear, that, being objected to, it is not admissible, the other original party to the cause of action being dead. Gen. Stat. E. I. cap. 203, § 32. The writing itself is not produced, having either been lost or destroyed. The testimony can have no effect.
 

 The defendants set up the statute of limitations, or the statute of possessions, in bar of the suit. We think the defence cannot avail them. The testimony goes to show that Elisha Watson, Jr., acknowledged that the complainant had a right in the Bentley Farm, though he may have misapprehended its nature and extent. But, even if he did not acknowledge it, the estate to which the complainant was entitled was an estate in remainder, and he could not sue for the possession of it, even in equity, until the death of Elisha Watson, Jr. He was, therefore, within the saving of the statute.
 
 Thompson
 
 v.
 
 Simpson, 1
 
 Dr. & War. 459, 489 ;
 
 Attorney General
 
 v.
 
 Magdalen College,
 
 18 Beav. 223, 239;
 
 Life Association of Scotland
 
 v.
 
 Siddal,
 
 3 De G., F.
 
 &
 
 J. 58 ;
 
 Duke of Leeds
 
 v.
 
 Earl of Amherst,
 
 2 Phillips, 117; Perry on Trusts, § 860.
 

 The defendants also contend that the .complainant ought not to have relief because of his laches. This is urged in behalf of the creditors. We suppose the complainant, though he could not have sued for possession, could have maintained a suit to have the resulting trust converted into a legal estate in remainder. If he. had brought such a suit when he came of age, the creditors would have no ground of complaint. It would have been well, both for the creditors and himself, if he had done so ; and if there was any evidence that he knew, or had any reason to suppose, that Elisha Watson, Jr., was obtaining credit because he was believed to be the sole owner of the Bentley Farm, we should be inclined to hold that he had, by his neglect, forfeited his right to relief. But there is no such evidence. For anything that appears, he did not know that his father was much in debt. He is, therefore, not chargeable with bad faith. And considering that his estate was only an estate in remainder, we do not think he can be held to have forfeited his claim to equitable relief by his laches. We decide that the complainant is entitled
 
 *477
 
 to have four undivided thirty-thirds of the part of tbe Bentley Farm remaining unsold and not under mortgages, free and clear of all claims of the widow, heirs, or creditors of Elisha Watson, Jr. We also decide, that he is entitled in like manner to four thirty-thirds of the mortgaged part, subject to the mortgage, the other twenty-nine thirty-thirds, however, being primarily chargeable with the mortgage debt.
 

 Peabody
 
 Grafts, for complainant.
 

 Hdward H.
 
 Hazard,
 
 Charles H. Parhhurst Robert Thomp
 
 son., for respondents.
 

 The decree may be drawn to carry the decision into effect.
 

 Decree accordingly.