HOKE, J., concurring; CLARK, C. J., dissenting.
This is an action instituted by the plaintiffs, the children of D. T. Pritchard and grandnephew and nieces of D. L. Pritchard, to establish a parol trust and to recover possession of land.
The defendant relies on the plea of the statute of limitations and laches.
D. L. Pritchard was formerly the owner of the land described in the complaint, and on 2 January 1886, he executed a deed therefor to J. G. Hughes, and it is at this time and in connection with the execution of this deed it is alleged the parol trust was declared.
On 14 March 1888, after the levy of an execution against said Hughes and the allotment of his homestead, the part of the land in excess of the homestead, 80 acres, was sold and a deed therefor made to the purchaser, James H. Sawyer.
After the death of Sawyer, this part of the land was, on 11 September 1899, sold for partition among the heirs of Sawyer, and a deed therefor executed to L. P. Williams.
On 15 January 1900, Williams conveyed this land to John S. McCoy; on 7 January 1907, McCoy conveyed to W. Lynch, and on 14 January 1911, Lynch conveyed this part of the land to the defendant.
On 14 January 1894, Hughes conveyed the land covered by the homestead, 160 acres, to his wife by deed purporting to convey *Page 342 
(321) in fee, which was registered in 1902, and on 3 May 1907, Mrs. Hughes and her daughter Elizabeth conveyed the same land to the defendant.
Mrs. Hughes died in 1913; Elizabeth Hughes in May, 1915, and this action was commenced in October, 1916.
There was a motion for judgment of nonsuit upon the ground that the action was barred by the statute of limitations upon the admitted facts. This motion was overruled and the defendant excepted.
His Honor instructed the jury if they believed the evidence to answer the issue as to the statute of limitations in favor of the plaintiffs, and the defendant excepted. The jury returned the following verdict:
1. Did Joseph G. Hughes hold the property sued for in trust to convey the same as alleged in the complaint? Answer: "Yes."
2. Did the defendant or any of those under whom he claims purchase the 160-acre tract for value and without notice of said trust? Answer: "No."
3. Did the defendant, or any of those under whom he claims, purchase the 80-acre tract for value and without notice of said trust? Answer: "No."
4. What has been the rental value since 1915? Answer: "$500."
5. Is plaintiff's cause of action barred by the statute of limitations? Answer: "No."
Judgment was entered in favor of the plaintiffs, and the defendant appealed.
The trust established by the verdict is that J. G. Hughes, the grantee in the deed of 1886, should hold the title in trust to convey the same to the wife of Joseph G. Hughes for life, and then to himself for life if he survived her, and then to Mary Elizabeth Hughes for life, with a remainder over in two-thirds of said lands to her children if any surviving her should live to be 21 years of age, and in one-third to the plaintiffs; and if she, said Mary Elizabeth Hughes, should die without children her surviving who should live to be 21 years of age, then to convey the whole of said lands after the death of said Mary Elizabeth Hughes to the children of said D. T. Pritchard, the plaintiffs in this action, share and share alike, in fee simple.
The verdict, when considered in connection with the charge, also establishes that neither the defendant nor any one under whom he *Page 343 
claims is a purchaser for value, so that the question discussed, but not decided, in Wood v. Tinsley, 138 N.C. 509, and Lynch v. Johnson,171 N.C. 632, as to the effect of the Coroner Act on parol (322) trusts is not presented, and the learned counsel for defendant do not so contend in the oral argument or by brief.
The plaintiffs as remaindermen, vested as to one-third and contingent as to two-thirds interest, could have maintained an action to have the trust declared during the existence of the life interest, as without this right it would have been in the power of the trustee to defeat the trust, resting in parol, by a conveyance to an innocent purchaser for value. "Where, however, a party has an interest, it is perfectly immaterial how minute the interest may be, or how distant the possibility of the possession of that minute interest, if it is a present interest. A present interest, the enjoyment of which may depend upon the most remote and improbable contingency, is nevertheless a present estate; and, as in the case uponLord Berkley's Will, though the interest may, with reference to the chance, be worth nothing, yet it is in contemplation of law an estate and interest, upon which a bill may be supported." Danll., Ch. Pr., Vol. 1, 317.
"A remainderman is entitled to equitable relief whenever necessary to protect his interest against loss or injury." 16 Cyc. 658. See to same effect, Story Eq. Pl., sec. 301; Allan v. Allan, 6 Ves. 135; Latham v. L.Co., 139 N.C. 211.
This right is in the nature of a bill in equity to perpetuate testimony, with the additional element of declaring the trusts, which is no more than the jurisdiction in equity to enter a decree preserving the property when it is in danger of loss and where, but for such decree, the rights of interested parties might be destroyed.
In such proceeding by the remaindermen, the land itself, with the right of control and possession, is not before the Court. The res is the establishment of the respective interests in the title, and no order or decree can be entered disturbing the possession of those entitled to interests for life, and it cannot therefore be the equivalent of, nor coextensive with, an action to declare the trust and to recover possession of the land.
If this right did not exist in the remaindermen, lapse of time cannot affect the present action for possession, which could not be maintained until the death of the life tenant in 1915, and if it did exist it came into being at the same time and by the same act with the right now attempted to be exercised, to establish the trust and to recover possession. The two rights are not only not inconsistent, but one includes the other, and it is only when two rights are inconsistent that the party *Page 344 
is put to his election, and that the exercise of one or the failure to do so bars the other.
(323) In Machine Co. v. Owings, 140 N.C. 505, Justice Hoke quotes the approved doctrine as follows: "In Enc. Pl. and Prac., Vol 7, 362, the doctrine is stated as follows: `As already stated, the principle does not apply to all coexistent remedies. As regards what have been termed consistent remedies, the suitor may, without let or hindrance from any rule of law, use one or all in a given case. He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final, and if not satisfied with the result of that he may commence and carry through the prosecution of another. Thus, where a sale of chattels is induced by the fraud of the vendee, the vendor may prosecute the vendee for the price of the articles in one action and in another for damages on account of the fraud, both proceeding on the theory of ratifying the sale; but he cannot maintain either if he has rescinded the sale or if, on the theory of rescission, he has resorted to replevin to recover the property. No suitor is allowed to invoke the aid of the courts upon contradictory principles of redress upon one and the same line of facts.' In 3 Words and Phrases Judicially Defined, p. 2338, it is said: `The whole doctrine of election is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other. The principle does not apply to coexisting and consistent remedies.' These statements of doctrine are supported by well-considered decisions and are very generally accepted as correct. Whittier v. Collins, 15 R.I. 90; Bacon v. Moody, 117 G. 207; Austen v. Decker, 109 Iowa 109; Black v. Miller, 75 Mich. 323. " The principles has been applied in a number of cases to protect the remaindermen against the plea of time and laches.
In Stewart v. Conrad, 100 Va. 135, there was a misappropriation of a fund held in trust for life and then in remainder, and the Court said as to the right of action: "The remaindermen, under the terms of the will creating the trust fund, are not entitled to the possession of any part of it until the death of the life tenant, who was a party to this suit, and who, so far as this record shows, is still living. Until her death the appellants would have no standing in court except to ask a court of equity to prevent or remedy a violation of the trust and to preserve the trust fund. They had the right to invoke the aid of a court for those purposes, but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert the rights which have not yet accrued."
In Watson v. Thompson, 12 R.I. 472, it is held that although a remainderman might maintain an action to have a resulting trust *Page 345 
declared during the existence of a life estate, that his failure to do so would not be accounted to him as laches and cause a forfeiture of his right of action on the termination of the life estate.
In Aiken v. Suttle, 72 Tenn. 109, defendants claimed under (324) deeds purporting to convey a fee, and relied on the statute of limitations. The Court held the plaintiff not barred as she was as remainderman, and said: "The statute of limitations could not run against her until after the termination of the particular estate by the death of C. K. Gillespie. Miller v. Miller, Meigs, 484; McCorry v.King's Heirs, 3 Hum. 267. She was not bound to sue until her right to possession should have accrued. Nevertheless, at any time prior thereto she might sue to have a cloud removed from her remainder interest and to have her rights declared. A remainderman is not obliged to wait until the right of possession has accrued, but may have a cloud removed during the existence of the particular estate."
In Gibson v. Joyner, 37 Miss. 167, it was held that the statute of limitations did not begin to run against remaindermen until termination of life estate, although he might have maintained an action before that time to prevent loss of the property. The case of Wooten v. R. R., 128 N.C. 119, and Baker v. R. R., 173 N.C. 365, also have a direct bearing on the question involved here.
In the first of these cases stock was bequeathed to Charles Bradley in 1854 to hold for Lucy Jewett for life, and upon her death for her surviving children. The stock appeared on the books of the company in the name of Bradley, trustee for Lucy Jewett. In 1869, Bradley, trustee, transferred the stock to Lucy Jewett absolutely and new stock was issued, which in the same year was sold by her to various persons. Lucy Jewett died in 1898, twenty-nine years after the sale, and the children commenced their action the following year. It was held that the action was not barred by the statute of limitations, and the Court, among other things, said: "The defendant further sets up the statute of limitations against the demand of the plaintiffs. We are not deciding that the plaintiffs had no right to interfere in the transfer of the stock to have it restored to its proper ownership at any time after the wrongful transfer, but they were not compelled to take action for the recovery of the stock or its value until after the death of their mother, which occurred in 1898. This action was commenced in 1898, and is not therefore barred by the statute of limitations."
In the Baker case the facts are similar, except the interest in remaindermen was contingent and forty-seven years elapsed after the breach of trust before the death of the life tenant, and it approves the Wooten
case.
Again, neither the defendant nor any one under whom he claims *Page 346 
has held adversely to the plaintiffs during the existence of the life interests, as none of them are purchasers for value and all took with notice of the equity of the plaintiffs.
(325) It is true the execution of a deed by the trustee to his wife purporting to convey the fee was a renunciation of the trust by him (Coxe v. Carson, 169 N.C. 132), and thereafter his relation to the plaintiff was adversary, but by the same act he parted with the title and with the power to protect the interests of the plaintiffs, and he conveyed the land to his wife, for whom he held the title in trust for life, who took the conveyance with notice.
This deed operated to convey to the wife her interest for life, and as she had notice of the plaintiffs' equity she held the fee in remainder in trust for the plaintiffs, and the same rule prevails as to the conveyance to the defendant. McMillan v. Baker, 85 N.C. 291; Griffin v. Thomas,128 N.C. 312.
In the Baker case, Ronald McMillan, trustee, was directed by a court of equity to invest certain money in land to be held in trust for his wife for life, and then for her children, and in 1855, in violation of the trust, he made the investment and took the title in trust for his wife in fee. The trustee died in 1860 and the wife in 1878, and the action was commenced the following year by the children against the defendant, who bought under an execution sale against the wife in 1869. It was held that the deed in favor of the wife, although in form a fee, conveyed the life estate, and that there was no adverse holding against the plaintiff by the wife or the defendant until the death of the wife.
We are, therefore, of opinion the plaintiffs cause of action is not barred by the lapse of time.
We have considered the other exceptions of the defendant and find no reversible error.
The exception principally relied on is to the refusal of his Honor to permit the defendant to prove, for the purpose of impeachment, by the cross-examination of D. T. Pritchard, who was the principal witness to establish the trust, that he qualified as executor of D. L. Pritchard, and that he made no return of the land in controversy, although the debts of the estate exceeded the assets.
The first answer to the position of the defendant is that the facts sought to be elicted from the witness substantially appeared in evidence.
The witness testified that he qualified as executor, and the fact that the title remained in Hughes and his grantee until the commencement of this action shows that he never proceeded against the land in controversy as the property of D. L. Pritchard. He also testified that he administered the whole estate of his uncle; that the whole estate was *Page 347 
sold and his indebtedness paid as far as it went; that the only man he owed was Mr. Hinton, and he owed him $9,000, which clearly implies that the assets were not sufficient to pay the debts.
Again, his failure to make return of the property is (326) consistent with his testimony that it was conveyed to Hughes in trust, and if not, the bias and feeling of the witness towards the cause and parties was made to appear clearly by his further cross-examination.
No error.