# Moore *versus* Luce.

A tenant for life, who has lost his estate by adverse possession of twenty-one years, can neither recover the land himself, nor, by transfer of his claim, enable any one else to do so before the termination of the life estate.

The law never takes away all remedy without an intention to destroy the right.

If a tenant for life incurs a forfeiture, the remainder-man is not bound to treat the estate as merged, and to enter immediately.

A tenant for life cannot destroy the rights of a remainder-man by a surrender or a release, or by any other voluntary act for the purpose of merging the particular estate in the greater.

ERROR to the Court of Common Pleas of *Washington county.*

Ejectment for forty-five acres of land in Fallowfield township.

The land in dispute was one of the purparts of the estate of Patrick McCardle, which was allotted to Nancy Moore, a daughter of McCardle, and mother of the plaintiff. Mrs. Moore was married in 1818 and died in 1823, leaving her husband, Henry Moore, and son Eli Moore, the plaintiff, surviving her, who are still living.

In 1826 or 1827, several years after the death of Mrs. Moore, Charles Farquhar went into possession of the land, in pursuance of a purchase of A. Vanvoorhis, the assumed agent of Mrs. Moore. He held it for several years, when he sold to the defendant, Luce, who has since continued in possession, and has made improvements thereon.

On the 26th June, 1851, Henry Moore surrendered his curtesy estate by deed to the plaintiff. In this suit the plaintiff claimed to recover the land and mesne profits as the only heir of his mother, and as the releasee of the curtesy estate of his father. The defendant claimed to hold the land by virtue of the statute of limitations. He proved possession in himself and his grantor from 1826; and to show the extent of his claim gave in evidence an agreement dated November 26, 1826, and duly recorded between "Abraham Vanvoorhis, the proper agent of Nancy Moore, of the first part, and Charles Farquhar of the second part," for

[Moore v. Luce.]

the land in controversy for a price certain. This he followed by the deed from Farquhar to himself, dated 26th April, 1834.

The plaintiff, in reply, offered to show that the price paid by Farquhar to Vanvoorhis is still in his hands; and offered in evidence the letter of attorney from Henry Moore and Nancy, his wife, dated 21st December, 1818, constituting Abraham Vanvoorhis attorney in fact to receive her interest in the *personal* estate of her father, Patrick McCardle, under which power Vanvoorhis, three years after her death, assumed to act in making the sale to Farquhar. This evidence the court considered irrelevant and refused to hear, which was the subject of the third assignment of error.

He also claimed that the curtesy estate, on the 5th of June, 1851, merged in the larger estate by him owned as the heir at law of Nancy Moore, and thereby a right of entry accrued to him, and as owner of the fee he brought this suit to recover the land in controversy.

The plaintiff submitted the following point:—

"That if the jury believe the possession of the defendant, and those under whom he claims, commenced during the existence of the curtesy estate in Henry Moore, the plaintiff would have no right of action until that estate terminated by release or death, and the statute of limitations would not until then commence to run against the plaintiff; and upon the release of the curtesy it would merge in the estate of the plaintiff as heir at law of Nancy Moore, and he could recover in ejectment on that title."

Which the court (GILMORE, P.) answered in the negative, and which was the subject of the first assignment of error.

The court, *inter alia*, charged the jury as follows:—

"If the defendant, and those under whom he claims, have been in the continued, notorious, and adverse possession of these premises for more than twenty-one years before 1851, the date of the release, the court charge you that the plaintiff is not entitled to recover. The defendant was then in fact seised of the estate which the tenant by the curtesy endeavoured to release. That estate being divested, he had nothing to release."

Which was the subject of the second assignment of error.

*Acheson* and *Wilson*, for plaintiff in error.—The possession could not be adverse, to the outstanding dower estate: Lang *v.* Mast, 1 *Jones* 195. In title acquired by the statute of limitation there is no presumption of a grant: *Blan. on Lim.* 2–44. It operates as an extinguishment of the remedy: *Green Cruise*, tit. xxii., ch. 2, § 1. There was no outstanding legal estate to prevent the curtesy merging in the fee. The former has been merged and swallowed up by the latter: Marple *v.* Myers, 2 *Jones* 122; Carlisle *v.* Carlisle, 1 *Penn. Rep.* 6; Weddle *v.* Robertson, 6 *Watts*

[Moore *v.* Luce.]

486; 1 *Coke's Inst.* ch. 4, pl. 30 *a*; Bouslough *v.* Bouslough, 17 *S. & R.* 353; Stehman *v.* Huber, 9 *Harris* 262; Lancaster County Bank *v.* Stauffer, 10 *Barr* 399.

*Montgomery* and *McKennan*, for defendant in error.—The only question presented is, what effect has the statute of limitations upon the right of entry of the remainder-man to whom the life estate is released? Adverse possession for twenty-one years is a positive title: Taylor *v.* Hurde, 1 *Burr.* 119; Stokes *v.* Berry, 1 *Salk.* 421; Pederick *v.* Searle, 5 *S. & R.* 240.

The plaintiff could not acquire by the act of Henry Moore a right which he himself could not assert. His right of possession and of entry were taken away by the statute. Could his conveyance operate to invest the plaintiff with the right of possession during his life: 2 *Co. Litt.* (*Thomas. Ed.*) 662–3; 3 *Prest. Conv.* 446–8; 2 *Black. Com.* 326; 2 *Co. Litt.* 651; 2 *Roll. Ab.* 494. Conceding that the release conferred upon the plaintiff a right of entry, yet another right of entry would accrue to him at the death of the tenant for life, and he might take advantage of either at his option: Wells *v.* Prince, 9 *Mass.* 508; Wallingford *v.* Heard, 15 *Mass.* 472; Stevens *v.* Winship, 1 *Pick.* 327; Jackson *v.* Mancius, 2 *Wend.* 357; Crow *v.* Kightlinger, 1 *Casey* 343; 2 *Prest. on Conv.* 317–321; 3 *Lev.* 35; 3 *Mod.* 96; 7 *S. & R.* 376.

The opinion of the court was delivered by

LEWIS, C. J.—It is impossible for one without either title or power to convey a valid title to another. The stream cannot rise above its source. The case of a *bona fide* purchaser, without notice, is not an exception to the rule, for it is because the vendor had the perfect legal estate that he could extinguish the equity of another by a sale to a purchaser without notice. It follows that a tenant for life, who has lost his right by an adverse possession of twenty-one years, can neither recover the land himself, nor, by transfer of his claim, enable any one else to do it before the termination of the life estate. The statute of limitation gives a perfect title: 5 *S. & R.* 240; 10 *Watts* 295; 7 *Harris* 306. It is a mistake to suppose that the person barred by the statute loses nothing but his remedy. The law never deliberately takes away *all remedy* without an intention to destroy the *right.* Remedies are frequently changed. One is withdrawn and others remain, or one is substituted for another. But when all remedies are taken away after a specified period of neglect in asserting rights, and when this is done for the purpose of promoting the best interests of society, the right itself is destroyed. In this case, the tenant for life, at the time he released to the plaintiff, could neither make entry nor maintain any real or possessory action. His right was completely vested in the person in possession. He had nothing whatever to convey. His release was

[Moore *v.* Luce.]

not worth the paper on which it was written. It put the plaintiff in no better situation than he was in before. It is idle to suppose that the transfer from Henry Moore, the tenant by the curtesy, to Eli Moore, the remainder-man, can operate, by way of merger, so as to destroy the legal estate of Luce. The transfer is not strictly a release, because Eli Moore had neither possession nor right of possession when he received it. It is not properly a *surrender*, because Henry Moore had neither possession nor right of possession when it was made. It can be nothing more than a mere transfer of his right, and that, as we have seen, was nothing. But conceding that it may operate as a technical release or surrender, so as to drown the less estate in the greater, as between the parties to it, it cannot have that effect against strangers who were not parties to it. Merger takes place when a greater and a less estate come together in the same person, and when there is no reason for their longer existence as separate estates. The doctrine has its foundation in the convenience of the parties interested, and therefore whenever the rights of strangers, not parties to the act that would otherwise work an extinguishment of the particular estate, require it, the two estates will still have a separate continuance in contemplation of law. If the tenant for life incurs a forfeiture, the remainder-man is not bound to treat the estate as merged, and to enter immediately. He may have his action after the death of the tenant for life, without being affected by the previous possession. So if there be a judgment or mortgage or lease for years, or any other interest derived out of, or attaching upon the life estate, the tenant for life cannot destroy these rights by a surrender, or a release, or by any other voluntary act for the purpose of merging the particular estate in the greater. If he cannot destroy partial interests, carved out of his estate, there is still less reason why he should have power to destroy the title of one who has acquired his whole estate. The defendant below has that estate. Henry Moore's transfer does not impair it in any respect. Eli Moore may recover after the death of Henry Moore, but not before.

This is the principle recognised in Crow *v.* Kightlinger, 1 *Casey* 343. The case of Marple *v.* Myers, 2 *Jones* 122, does not stand in opposition to it. It is true there appears to have been a recovery of one-third of the land, in opposition to the principle, but the defendant in possession, whose rights were affected by it, took no writ of error, and no one made objection to that part of the case. The plaintiffs in the case could make no objection to it, because the decision was in their favour. But they took a writ of error because they were not allowed to recover the other two-thirds claimed under a different title, and the only error assigned was to that part of the charge in which the jury were instructed that the plaintiffs were not protected by the proviso in the statute of limitations in favour of persons under the disabilities of infancy,

[Moore *v.* Luce.]

lunacy, &c.   The present question was neither raised, considered, nor decided.   The remark of the judge in relation to it was not pertinent to the matter in judgment, and cannot be received as an authoritative exposition of the law.

It is perfectly immaterial whether Vanvoorhis ever paid over to the parties entitled the money received on his sale of the land to Farquhar.   The contract with Vanvoorhis, and the deed from him, as the agent of Nancy Moore, were given in evidence merely for the purpose of showing the extent of the defendant's claim under the statute of limitations.   The non-payment of the money by Vanvoorhis to Nancy Moore could not tend in the slightest degree to show that the extent of the possession was not as claimed. The want of authority in Vanvoorhis either to sell or convey was equally unimportant in its bearing on that part of the issue.

Judgment affirmed.