## KING et al. v. RICHARDSON et al.

### No. 5042.

Circuit Court of Appeals, Fourth Circuit.

June 19, 1943.

L. P. McLendon, of Greensboro, N. C. (A. L. Brooks, of Greensboro, N. C., Charles G. Rose, of Fayetteville, N. C., and Thornton H. Brooks, of Greensboro, N. C., on the brief), for appellants and cross-appellees.

B. S. Womble, of Winston-Salem, N. C., and Clifford Frazier, of Greensboro, N. C. (Russell M. Robinson, of Greensboro, N. C., and Lee McCanliss, of New York City, on the brief), for appellees and cross-appellants.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

These are cross appeals in a suit to enforce a trust with respect to a remainder interest in certain stock of the Vick Chemical Company, devised by the will of the late Lunsford Richardson to Trustees of the First Presbyterian Church of Greensboro, N. C. with direction to use the "profits or dividends" arising therefrom for the benefit of "Home and Foreign Missions and the benevolent causes of the church, in such proportion as the trustees deem best". Plaintiffs are the Trustees of the church and certain corporations engaged in carrying on benevolent causes of the church, who sue in behalf of themselves and other beneficiaries under the will similarly situated. The defendants are the surviving executors and trustees under the will of Mr. Richardson and the Vick Chemical Company, a Delaware corporation, which has succeeded to the rights and liabilities of the original corporation which issued the stock.

Plaintiffs complained, as to a portion of the stock, of a sale to create assets to pay debts and, as to the remainder, of a transfer to the children of Mr. Richardson under a sale by the trustees in breach of trust for the purpose of raising funds, not for the purposes of the trust, but for the erection of a church building. The District Court held that a trust had been created by the will of Mr. Richardson, that plaintiffs were bound by the action of the state court with respect to the portion of stock sold to create assets to pay debts, that the remainder of the stock had been transferred in derogation of the trust, that the rights of plaintiffs with respect thereto were not barred by the statute of limitations, by laches or by estoppel, and that plaintiffs were entitled to recover of defendants on the basis of the value which the stock had attained as the result of various business expansions and reorganizations, subject, however, to a set off of the amount received by the trustees from the sale made in breach of trust with interest on such amount from the date of sale.

Plaintiffs contend on appeal that a trust should be declared with respect to the stock sold to create assets to pay debts, as well as to that sold by the trustees and transferred to the children of Mr. Richardson, and that no set off should be allowed on account of the amount received from the sale in breach of trust of the remainder of the stock, since the trust received no benefit from the transaction. Defendants contend that no trust was created by the will but that an outright gift was made to the First Presbyterian Church, that the sale by the trustees of the church was valid and binding upon plaintiffs, that plaintiffs are barred of recovery by the statute of limitations, by laches and by estoppel, and that, at all events, recovery should not include accretions to the stock or amounts paid on stock retirements, where these represent earnings accrued during the estate of the life tenant.

The will in question was executed in the year 1917. At that time, Lunsford Richardson, the testator, was the owner of a 51/100 interest in the Vick Chemical Company, a partnership, in which the remaining 49/100 interest was owned by his two sons J. H. Smith Richardson and Lunsford Richardson, Jr., defendants herein. By the terms of the will, testator gave a 3/100 interest in the company to J. H. Smith Richardson, a 10/100 interest to

Lunsford Richardson, Jr., and a 10/100 interest to each of his three daughters for life with remainder to their children and with provision that the share of each daughter was to be held in trust for her for a period of ten years. The remaining 8/100 interest he gave to his wife for life, with remainder as to 3/100 to the Trustees of the First Presbyterian Church with direction that "the profits or dividends arising therefrom be used by the said Trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the trustees deem best". The remainder in the remaining 5/100 interest was given to the children in equal shares after the death of the wife. The real estate and all the personal property other than the interest in the Vick Chemical Company was given in trust to Mrs. Richardson for life with remainder to the children. Mrs. Richardson, J. H. S. Richardson, and Lunsford Richardson, Jr., were appointed executors under the will and trustees of the trusts created for Mrs. Richardson and for the daughters. The paragraph of the will creating the trust here in controversy is the fifth paragraph and is as follows: "Fifth: I give and bequeath to my beloved wife, Mary Lynn Richardson, eight one-hundredths interest in the Vick Chemical Company. At the death of my said wife it is my desire that of the said eight one-hundredths interest so devised to her, three one-hundredths thereof shall be and become absolutely the property of the Trustees of the First Presbyterian Church, and the profits or dividends arising therefrom shall be used by the said Trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the Trustees deem best. The remaining five one-hundredths interest I desire to be distributed equally among my five children, herein named, each receiving one share thereof in fee simple."

As bearing upon the intention of the testator with respect to the duties imposed upon the trustees of the church by this paragraph of the will, the thirteenth paragraph which gives a bequest of $2,000 to the trustees upon a similar trust should be considered. That paragraph is as follows: "Thirteenth: I hereby direct that my executors shall out of the estate of which I may die seized and possessed pay all my just debts and funeral expenses, and thereafter pay to the Trustees of the First Pres-

byterian Church of Greensboro the sum of Two Thousand Dollars, to be held by them absolutely and invested, and the proceeds arising from such investment I desire that they shall devote annually to the benevolent causes of the church in such proportion as to the said Trustees may seem best."

After the provisions disposing of testator's interest in the Vick Chemical Company, the will contains the following provision as to sale by devisees of their interests: "Seventh: The devisees herein named may wish to sell the property above given to them, and in case they do, my desire and direction is that any one so desiring to sell his or her share may do so on condition that they shall give the others the option and refusal to take such share or shares at a reasonable price before selling out of the family. A reasonable price, as here used, for the entire business shall be ascertained as follows: Take the total profits of the Vick Chemical Company for five years immediately preceding the proposed sale, of any particular interest or of the whole of said company, and divide by five to get the average annual profit, and multiply this result by three. The sum thus found shall be construed to be the reasonable cash value of the whole business. The devisees, however, may concur in making a joint sale of the whole at any agreed price, and they are hereby authorized to do so if they wish; then, and in either case, that is to say, whether on a joint or a several sale, the shares of the daughters in the proceeds of the sale shall be received by my trustees, hereinafter named, and by them reinvested in trust, and pay the annual income to each during her life, and at her death pay the income annually to such child or children of hers, if any, or the issue of such child or children. * * *".

With respect to "Home and Foreign Missions and the benevolent causes of the church", the court below made the following finding, viz.:

"3. The benevolent causes of the Presbyterian Church for the years 1917 through 1920 were as follows, and the funds contributed to said benevolent causes were administered by corporate executive committees, the members of which were appointed by the General Assembly and the names of said committee appearing after the name of the respective benevolent cause:

"1. Foreign Missions: Executive Committee of Foreign Missions of the Presby-

terian Church in the United States, incorporated in 1895 in the State of Tennessee.

"2. Home Missions: The Executive Committee of Home Missions of the Presbyterian Church in the United States, incorporated in 1905 in the State of Georgia.

"3. Christian Education and Ministerial Relief: Executive Committee of Christian Education and Ministerial Relief of the Presbyterian Church of the United States, incorporated in 1904 in the Commonwealth of Kentucky.

"4. Sunday School and Extension and Publication: Presbyterian Committee on Publication, incorporated in 1873 in the State of Virginia.

"5. Educational Institutes: Various Presbyterian Colleges in the South.

"6. Bible Cause: American Bible Society.

"7. Orphan Homes: Various Orphanages in the South.

"The known benevolent causes of the Presbyterian Church of the year 1940-1941 were the same as for the years 1917-1920, supra, with the exception that there has been added as a benevolent cause the Assembly's Training School; General Assembly's Training School for Lay Workers, incorporated in 1915 in the State of Virginia."

Testator had long been a devout member of the Presbyterian Church. He was an Elder of that church and had attended meetings of its Presbytery, Synod and General Assembly. He was thoroughly familiar with the church organization, knew how and by what agencies the benevolent causes of the church were carried forward and had been a regular contributor to these causes. It appears that the distribution of contributions among the benevolent causes of the church is fixed annually by the Assembly of the church on a percentage basis, and that the percentage so fixed is transmitted through church channels to the local churches.

Testator died in the year 1919. His will was duly admitted to probate and the executors and trustees named therein qualified as such. Prior to his death the Vick Chemical Company, which had operated as a partnership was incorporated with a capital stock of 15,000 shares, 7,650 of which belonged to testator and passed under his will. In 1921 an order was obtained from the state court exercising probate jurisdiction in the premises for the sale of one-

half of the stock to the corporation to create assets to pay the debts of the estate, which amounted to a sum in excess of $400,000. The other stockholders of the corporation made sale of one-half of their stock holdings to the corporation at the same time and on the same basis, so that the sale amounted to the declaration of a dividend and a stock reduction of 50% on the part of the corporation, the stockholders continuing to hold the same proportionate interest in the corporation as before the reduction. As a result of this transaction the executors received $382,500 in cash from the corporation, which was used by them for the payment of debts. There is no showing that a disproportionate part of the indebtedness of the estate was paid from this fund to the prejudice of the legatees entitled to the stock.

In the latter part of the year 1922, the First Presbyterian Church of Greensboro was engaged in a campaign among its members to raise funds to build a new church. A goal of $250,000 had been set, and Mrs. Richardson, the widow of testator, was anxious that this amount be raised. When it seemed that not over $210,000 would be subscribed, the idea occurred to her that the goal could be reached if the church could sell the remainder interest in the stock of the Vick Chemical Company devised to it by the will of her husband and devote the proceeds to the cause. She was advised that the church could make the sale but that the remainder interest in the stock, which then amounted to 225 shares, was worth under the formula provided in the will only about $26,000. She thereupon arranged with her five children to purchase from her the entire interest in the stock for $45,000 and arranged with the trustees of the church to buy from them the remainder interest for that amount. This arrangement was carried out early in the year 1923. The trustees of the church conveyed to her the remainder interest in the shares and she paid them $45,000 in cash, which she had received from her children for that purpose. She then transferred to her children, in accordance with the prior arrangement, the entire interest in the shares including her life estate as well as the remainder interest purchased from the trustees; and the Vick Chemical Company transferred the shares to them on its books and issued certificates in their names.

The Vick Chemical Company was thoroughly cognizant of the terms of the trust

with respect to the remainder interest in the stock and of the circumstances under which the sale was made. The will of testator was recorded among its corporate records and its president was one of the children of Mrs. Richardson who acquired the stock and who knew that sale of it was being made to provide funds for the new church. The other stockholders were members of the Richardson family and were thoroughly cognizant of all the facts. Of the amount received by the trustees from Mrs. Richardson for the stock, $40,000 was applied on the purchase of a lot for the new church building and $5,000 was paid on a subscription made by the Richardson family to Davidson College.

No part of the proceeds of the stock went to Home or Foreign Missions or to any of the other benevolent causes of the Church, except that $5,000 was paid to Davidson College on a subscription of the Richardson family and not under the trust. In a letter of Mrs. Richardson to the Session of the church, suggesting the sale of the remainder interest in the stock, she called attention to the wishes of Mr. Richardson that the income or profits of the stock go to Home and Foreign Missions and the benevolent causes of the church and stated that she felt he would approve of the transaction provided these three causes did not suffer as a result thereof. An investigating committee of the Elders and Deacons made a report in which it was recommended that, more fully to carry out the wishes of the testator, the church pledge itself to give annually to the benevolent causes of the church, in addition to the church's apportionment, the sum of $2,400, or 6% on $40,000. This pledge, however, was never complied with, so that as a result of the diversion of the trust fund nothing has been received by the charities for which the trust was established in the will of testator.

Mrs. Richardson died in the year 1940. Officers of beneficiaries of the trust, or some of them, thereupon began making inquiries and learned for the first time of the conveyance made by the trustees in 1923. They demanded that the trustees take action to recover the trust fund, and this suit was thereupon instituted. There is nothing to show that, prior to the death of Mrs. Richardson, any of the beneficiaries had knowledge or anything to put them on notice of the sale by the trustees of the trust property.

It appears that the defendant Vick Chemical Company, a Delaware corporation, organized in 1933, succeeded to the assets and liabilities of and the ownership of all the stock in the North Carolina corporation of the same name, which was in existence in 1923 and which transferred upon its books the shares of stock in controversy to the children of Mrs. Richardson. It appears also that each share of stock in the original corporation is now represented by a number of shares in other corporations, resulting from reorganization and the organization of subsidiaries, and that certain capital stock of some of these has been retired, resulting in stock retirement payments received by stockholders.

Five questions are presented for our consideration by the appeals of the parties: (1) Was a trust created by the will with respect to the remainder in the 3/100 interest in the Vick Chemical Company for the benefit of Home and Foreign Missions and the benevolent causes of the church? (2) Are plaintiffs bound by the sale made under order of court to create assets to pay debts? (3) Was the sale made to Mrs. Richardson and her children of the remainder of the stock subject to the trust created by the will? (4) Are plaintiffs precluded by limitation, laches or estoppel from enforcing the trust? And (5) To what extent are defendants liable? We shall consider these questions in the order named.

We agree with the District Judge that the effect of the provisions of the fifth paragraph of the will above quoted was to create a trust with respect to the remainder in the 3/100 interest in the Vick Chemical Company for the benefit of "Home and Foreign Missions and the benevolent causes. of the church" [46 F.Supp. 510, 512], and not to vest the remainder interest in the trustees generally subject to the control of the local church as in case of property of the local church held by them. Under the law of North Carolina, trustees may be appointed to hold property for a church or religious congregation and are accountable to the church or congregation for the use and management of the property. C.S. §§ 3568 and 3569. There is nothing in the law, however, which precludes such trustees from accepting trusts for special purposes (Cf. Thornton v. Harris, 140 N.C. 498, 53 S.E. 341); and, even if there were, a trust for a special purpose would not fail because they were named as trustees.

but equity would appoint other trustees to administer it in application of the maxim that a trust will not be allowed to fail for lack of a trustee. The question, therefore, is whether the devise under consideration was to the trustees for the general purposes of the church or whether the remainder interest was to be held by them for special purposes beyond the control of the congregation.

■■■ We attach no importance to the fact that technical language creating a trust was not used in the will. Technical language is not required. A trust arises when property is given to one with direction that it be used and applied for the benefit of another. Pomeroy's Equity Jurisprudence, Fourth Ed., vol. 3, sec. 1009, and cases there cited. The intention to create a trust must be clear, but nothing could be clearer than the intention here when paragraphs five and thirteen are considered together. Testator was well acquainted with the organization of the church and the way in which its missions and benevolent causes functioned. He knew that these were administered by agencies and corporations entirely independent of the local church, and it is clear that he intended that the profits and dividends arising from this remainder interest should be given to them and not used by the local church for local purposes, such as the payment of the pastor's salary or the building of a house of worship. The trustees held title to property of the local church subject to the control of the congregation or the Elders and Deacons representing them; but it is clear that neither the congregation nor the Elders and Deacons were given any control over the trust property. The trustees were directed by the will to use the profits and dividends arising therefrom for missions and benevolent causes; and they, and not the congregation or its officers, were to make the allotment to the various causes and decide what proportion each should have. With respect to the bequest of $2,000 in the thirteenth paragraph, the trustees were directed to invest this and use the income from the investment for the benevolent causes, but there was no occasion to direct the investment in paragraph five, since the gift was of an interest in an investment that had already been made. As was well said by the late Chief Justice Clark in Witherington v. Herring, 140 N.C. 495, 53 S.E. 303, 304, 6 Ann.Cas. 188, "No technical terms need be used. It is sufficient if the language used shows the intention to create a trust and clearly points out the property, the disposition to be made of it, and the beneficiary. 1 Bispham, Eq. § 71; 28 A. & E. Enc. 910."

■■■ We do not regard this as a trust arising from the use of precatory words. The language used is not precatory but mandatory. Even where mere precatory words are used, a trust will be declared if the intention to create a trust is clear. Pomeroy's Equity Jurisprudence, 4th Ed., vol. 3, sec. 1014; St. James Parish v. Bagley, 138 N.C. 384, 50 S.E. 841, 845, 70 L.R.A. 160. As said in the case last cited, "The real test is whether the language is imperative, or leaves the use and disposition of the property to the discretion of the donee". Nor is it a case falling within the principle that no one can be a trustee for himself. Cf. Wetmore v. Parker, 52 N.Y. 450, 459; Bird v. Merklee, 144 N.Y. 544, 39 N.E. 645, 27 L.R.A. 423. The devise is not to the church generally or to the trustees for the benefit of the church whose property they hold in trust, in which case a designation of one of the purposes of the local church as the object of the gift might come within the principle. It is a devise for the benefit of independent charities to which the church contributes but which it does not control.

Defendants rely particularly upon St. James Parish v. Bagley, supra, and Williams v. Thompson, 216 N.C. 292, 4 S.E.2d 609. Neither decision supports their contention. The first held merely that the recital of the purpose for which a conveyance was made to a church did not impress a trust upon the title conveyed. The second involved a conveyance to a church of a building to be used as a parsonage, and it was held that no trust was created. Since the provision of a parsonage for the minister is one of the ordinary uses made by a church of its property, the direction amounted to no more than a direction as to how the grantee of property should use it. No trust was created, because of the principle that no one can be trustee for himself. The real question in the case was whether the language used created a condition subsequent which would defeat title upon use for another purpose. Neither case throws any light upon the questions here involved.

It is argued that the local church had benevolent causes to which it contributed

in addition to the benevolent causes supported by the general church; that the local congregation made contributions for benevolent causes which were apportioned by the authorities of the local church among all the benevolent causes; and that the devise was merely a gift to the local church to be used for purposes which were embraced among the activities in which it was engaged and, therefore, constituted a gift to the church for use in its own activities. The answer to this, as above indicated, is that the trust property was not made subject to the control of the local church as in the case of property owned by it, but to the control of the trustees who were directed to apply it to special purposes and to make the apportionment among them. This becomes increasingly clear when the provisions of the thirteenth paragraph of the will are considered, wherein the trustees are required to invest the bequest of $2,000 and use the income arising therefrom for the benevolent causes. Furthermore, testator knew that Home and Foreign Missions were carried on by independent agencies, and his naming these specifically as beneficiaries of the trust shows clearly that something other was intended than a use of the trust funds by the church for its own purposes.

■■ Defendants contended in the court below that the gift was void because the beneficiaries of the trust were not sufficiently designated. We do not understand that this point is made on appeal; and, at all events, it is without merit. Parol evidence was admissible to identify the missionary societies which testator must have had in mind in the devise to trustees of the church for home and foreign missions, and the same is true of the "benevolent causes" which had a well understood meaning in connection with church activities. Cf. Hass v. Hass, 195 N.C. 734, 143 S.E. 541; Ladies Benevolent Society v. Orrell, 195 N.C. 405, 142 S.E. 493. As was well said by the Judge below: "Next it is contended that no certain charitable objects are named. The gift, as above shown, was to the Trustees of the First Presbyterian Church in trust for the Home and Foreign Missions and benevolent causes of that church. Financial support of that church consisted of current expenses, building and debt funds, fuel, light, etc., and a group of benevolent causes which included Foreign Missions, Home Missions, Christian Education and Ministerial Relief,

Sunday School Extension and Publications, Educational Institutes, Bible Cause and Orphan Homes. With these causes and the practice of the church in supporting them the testator was thoroughly familiar. Now he could have given all of the income to Foreign Missions alone but delegated to his trustees the power to allocate among the benevolent causes of the church the dividends as the trustees saw fit. A bequest to Foreign Missions of the Baptist denomination, to Home Missions of the Baptist denomination and to the Thomasville Orphanage has been held a sufficient designation of a beneficiary. McLeod v. Jones, 159 N.C. 74, 74 S.E. 733. The evidence in this case leaves no doubt as to the objects of his bounty. He had supported them liberally in his life, he saw fit to perpetuate that support with his means after death. He wisely felt that the congregation could take care of the expenses of the church and that his gift to these charitable objects would best effectuate his purposes."

■■ And the trust is not invalidated by reason of the discretion reposed in the trustees to make the apportionment among the beneficiaries. Keith v. Scales, 124 N.C. 497, 32 S.E. 809; Speer v. Colbert, 200 U.S. 130, 26 S.Ct. 201, 50 L.Ed. 403; Going v. Emery, 16 Pick., Mass., 107, 26 Am.Dec. 645; In re Dulles' Estate, 218 Pa. 162, 67 A. 49, 12 L.R.A.,N.S., 1177 and note. The rule applicable under the law of North Carolina is thus stated by Justice Clark in Keith v. Scales, supra, 124 N.C. 497, 32 S.E. 812, as follows: "Courts incline strongly in favor of charitable gifts, and take special care to enforce them. 2 Story, Eq.Jur. § 1169. Charitable bequests are said to come within that department of human affairs where the maxim, 'Ut res magis valeat quam pereat,' has been and should be applied. 2 Perry, Trusts, § 687. * * * There are numerous cases that where the testator does not select the object of his bounty, but attempts to leave it to his executors or trustees to select the purpose or class, this is too indefinite, and the devise is void, because one cannot appoint another to make a will for him. Among cases of this kind are the famous Tilden will case (Tilden v. Green, 130 N. Y. 29, 28 N.E. 880 [14 L.R.A. 33, 27 Am. St.Rep. 487]); Bridges v. Pleasants, supra [39 N.C. 26, 44 Am.Dec. 94]; Johnson v. Johnson [92 Tenn. 559], 23 S.W. 114, 22 L.R.A. 179, and notes, 36 Am.St.Rep.

104; Gambell v. Trippe [75 Md. 252], 23 A. 461 [15 L.R.A. 235, 32 Am.St.Rep. 388]. But that is an entirely different matter from a case where the object of the bounty, or the class out of which the individuals are to be selected, is definite * * *".

### The Sale to Create Assets.

There can be no question but that, if it were shown that the order to sell the stock to create assets were obtained as a result of extrinsic fraud practiced in securing the order, the sale could be set aside and appropriate relief granted. See United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. But we agree with the court below that no fraud has been shown with respect to the matter and that the parties are bound by the order of the state court directing the sale. It should be noted, too, that this sale amounted to no more than the declaration of a dividend accompanied by a stock reduction, as a result of which the proportionate interests of the stockholders in the corporation remained unchanged. $382,500 in cash was received by the executors from the corporation as a result of this transaction; and the only possible interest of plaintiffs in this was in the remainder interest after the life estate of the widow in $22,500 thereof, worth at that time something less than $12,000. The entire estate of testator was covered by the devises and bequests contained in his will; the debts of the estate were in excess of $400,000; and there is nothing to indicate that, when the $382,500 was used for their payment, the trust made any more than its proportionate contribution. If it did, the remedy was in the probate court which administered the fund, and not here.

### The Sale to the Richardsons.

We may assume, as defendants argue, that the trustees were vested with a power of sale with respect to the corpus of the trust estate; but this becomes entirely immaterial under the admitted circumstances of the case. Granting that the trustees had a power of sale with respect to the trust property, it was a power which they could lawfully exercise only for the purposes of the trust; and when it was exercised in derogation thereof to the knowledge of the purchasers, the latter took the property subject to the trust. There can be no question but that the sale was made, in breach of the trust, to obtain funds for the new church building, that it was made pursuant to a prior arrangement that the proceeds of the sale should be used for that purpose, and that Mrs. Richardson and her children to whom the stock was transferred were parties to the arrangement. The Vick Chemical Company in making the transfer on its books was, likewise, chargeable with knowledge of the trust and that the transfer was in violation thereof; for testator's will had been made a part of its records and all of its officers and stockholders, who at that time consisted of the members of the Richardson family, knew that the transfer was being made in violation of the trust created by the will. That they had no fraudulent intent and honestly believed that they were acting lawfully does not affect the matter. The rule is thus stated by Professor Pomeroy, Equity Jurisprudence, 4th Ed., vol. 3, § 1048: "Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. Equity impresses the trust upon the property in the hands of the transferee or purchaser, compels him to perform the trust if it be active, and to hold the property subject to the trust, and renders him liable to all the remedies which may be proper for enforcing the rights of the beneficiary. It is not necessary that such transferee or purchaser should be guilty of positive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is in fact impressed, and that he is not a bona fide purchaser for a valuable consideration and without notice."

A. L. I. Restatement of the Law of Trusts states the rule as follows:

"Sec. 288, Transferee with Notice. If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust, although he paid value for the transfer.

"Comment: (a) The interest of the beneficiary in the trust property is not cut off by a transfer by the trustee in breach of trust to a third person who at the time of the transfer has notice that the transfer is in breach of trust, although he paid value for the transfer; and the beneficiary can in equity compel the third person to restore the property to the trust. The third person holds the interest which he acquires by the transfer upon a constructive trust for the beneficiary of the trust.

"The rule stated in this Section is applicable where the transferee has notice that the trustee is committing a breach of trust, whether the breach of trust is intentional or negligent or results from a misinterpretation of the trust instrument."

The case of Smith v. Ayer, 101 U.S. 320, 25 L.Ed. 955, is very much in point. In that case an executor with power of disposition as to assets in his hands pledged, as security for a personal loan, a note held by him in that capacity. In holding that the pledgee, who took the note with knowledge of the breach of trust, held it subject to the trust, the court, speaking through Mr. Justice Field, said: "There is no doubt that, unless restrained by statute, an executor can dispose of the personal assets of his testator by sale or pledge for all purposes connected with the discharge of his duties under the will. And even where the sale or pledge is made for other purposes, of which the purchaser or pledgee has no knowledge or notice, but takes the property in good faith, the transaction will be sustained; for the purchaser or pledgee is not bound to see to the disposition of the proceeds received. But the case is otherwise where the purchaser or pledgee has knowledge of the perversion of the property to other purposes than those of the estate, or the intended perversion of the proceeds. The executor, though holding the title to the personal assets, is not absolute owner of them. They are not liable for his debts, nor can he dispose of them by will. He holds them in trust to pay the debts of the deceased, and then to discharge his legacies; and, as in all other cases of trust, he is personally responsible for any breach of duty. And property thus held, acquired from him by third parties with knowledge of his trust and his disregard of its obligations can be followed and recovered. The law exacts the most perfect good faith from all parties dealing with a trustee respecting trust property. Whoever takes it for an object other than the general purposes of the trust, or such as may reasonably be supposed to be within its scope, must look to the authority of the trustee, or he will act at his peril."

The decisions in North Carolina apply the same principle. Nissen v. Baker, 198 N.C. 433, 152 S.E. 34, 38; Spence v. Pottery Co., 185 N.C. 218, 117 S.E. 32; Pritchard v. Williams, 175 N.C. 319, 95 S.E. 570; Lemly v. Atwood, 65 N.C. 46; Ward v. Brandt, 62 N.C. 71; Lockhart v. Philips, 36 N.C. 342; Bailey v. Wilson, 21 N.C. 182, 190. Directly in point is the case of Ward v. Brandt, supra. There a trustee made sale of property conveyed to him to hold as security for a debt, not in proper execution of the trust, but for the purpose of diverting the trust fund to the Confederate Government. It was held that the purchaser who took with notice held the property subject to the trust. Chief Justice Pearson said: "This equity does not rest on the motion that a purchaser at a trustee's sale must see to the application of the purchase-money; but upon a broad principle of justice, recognized and acted upon in Courts of Equity, and which is too plain to admit of discussion." See, also, United States v. Dunn, 268 U.S. 121, 132, 45 S.Ct. 451, 69 L.Ed. 876; Pennell v. Deffell, 4 De Gex M. & G. 372; Leake v. Watson, 58 Conn. 332, 20 A. 343, 8 L.R.A. 666, 18 Am.St.Rep. 270; Shaw v. Spencer, 100 Mass. 382, 97 Am.Dec. 107, 1 Am.Rep. 115; First Nat. Bank v. National Broadway Bank, 156 N.Y. 459, 51 N.E. 398, 42 L.R.A. 139; Indiana, Illinois & Iowa R. Co. v. Swannell, 157 Ill. 616, 41 N.E. 989, 30 L. R.A. 290; 65 C.J. pp. 986-988; Rapalje's note to Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622.

Limitations, Laches and Estoppel.

As the suit is concerned with a remainder interest in stock which was not available to the trust until the termination of the life estate, and as the life estate was not terminated until the year 1940, less than three years before the suit was instituted, we think it clear under the law of North Carolina that the suit was not barred by the statute of limitations. Wooten v. Wilmington & W. R. Co., 128 N.C. 119, 38 S.E. 298, 56 L.R.A. 615; Joyner v. Futrell, 136 N.C. 301, 48 S.E. 649; Baker v. Atlantic C. L. R. Co., 173 N.C. 365, 92 S.E. 170, L.R.A.1917E, 266; Pritchard v. Williams, 175 N.C. 319, 95 S.E. 570; Baggett v. Lanier, 178 N.C. 129, 100 S.E. 254.

861

The reason for this is well stated by the Supreme Court of Appeals of Virginia in Stewart v. Conrad's Adm'r, 100 Va. 128, 135, 40 S.E. 624, 627, in a passage quoted with approval by the Supreme Court of North Carolina in Pritchard v. Williams, supra, as follows: "The remainder-men, under the terms of the will creating the trust fund, are not entitled to the possession of any part of it until the death of the life tenant, who was a party to this suit, and who, so far as this record shows, is still living. Until her death the appellants would have no standing in a court except to ask a court of equity to prevent or remedy a violation of the trust and to preserve the trust fund. They had the right to invoke the aid of a court * * * for those purposes, but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert rights which have not yet accrued."

Here the 3/100 interest in controversy was given to Mrs. Richardson for life. Not until her death did it go to the trustees for the benefit of the trust, and not until then did a cause of action arise in their favor for its recovery. Wooten v. Wilmington & W. R. Co., supra, 128 N.C. 119, 38 S.E. 302, 56 L.R.A. 615, presented a similar situation. Testatrix there bequeathed railroad stock to her son to be held by him in trust for a daughter during the daughter's life and at her death to the daughter's children. The trustee transferred the stock to the daughter absolutely and the railroad made transfer to her upon its books. After the death of the life tenant, the remaindermen sued the railroad for the value of the stock. In upholding the recovery, the Supreme Court held that the statute of limitations began to run against the remaindermen only on the death of the holder of the life interest, saying: "The defendant further sets up the statute of limitations against the demand of the plaintiffs. We are not deciding that the plaintiffs had no right to interfere in the transfer of the stock to have it restored to its proper ownership at any time after the wrongful transfer, but they were not compelled to take action for the recovery of the stock or its value until after the death of their mother, which occurred in 1898. This action was commenced in 1899, and is not, therefore, barred by the statute of limitations."

It is suggested that the conveyance by the trustees to Mrs. Richardson resulted in the merger of the life estate and remainder interest so that the life estate fell in at that time and the statute of limitations began to run immediately. What occurred, however, was not a surrender or conveyance of the life interest to the trustees for the benefit of the trust, but a sale of the remainder by the trustees to the holder of the life interest under such circumstances as to constitute a breach of the trust and impress a constructive trust upon the remainder in the hands of the holder of the life interest and her transferees. Under such circumstances it is well settled that a merger of the estates does not result. "To constitute a merger, it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right". 19 Am.Jur. p. 588. Here the remainder interest was not held by Mrs. Richardson or her transferees in the same right as was the life estate, but was held subject to the trust imposed by the will. " 'The same right' does not mean the same method of acquisition, but means that she claims both estates as her own and holds neither for another as trustee or otherwise". Citizens Bank & Trust Co. v. Watkins, 215 N.C. 292, 1 S.E.2d 853, 857.

It is well settled also that the doctrine of merger will not be applied where its effect would be to prejudice the rights of innocent third persons. 19 Am.Jur. 593; 31 C.J.S. Estates, § 126, p. 149, 150. In Moore v. Luce, 29 Pa. 260, 72 Am.Dec. 629, it appeared that the owner of a life estate in land, barred by adverse possession, conveyed the life estate to the remainderman, who brought ejectment claiming possession on the theory that his remainder was not affected by the adverse possession and that the acquisition of the life estate resulted in a merger and accelerated his right of possession incident to the remainder. Holding that the doctrine of merger would not be applied to the prejudice of the rights of innocent third persons, the court laid down the rule which, mutatis mutandis, is applicable here, saying: "But conceding that it may operate as a technical release or surrender, so as to drown the less estate in the greater, as between the parties to it, it cannot have that effect against strangers who were not parties to it. Merger takes place when a greater and a less es-

tate come together in the same person, and when there is no reason for their longer existence as separate estates. The doctrine has its foundation in the convenience of the parties interested, and therefore whenever the rights of strangers, not parties to the act that would otherwise work an extinguishment of the particular estate, require it, the two estates will still have a separate continuance in contemplation of law."

The same facts which preclude the bar of the statute of limitations are applicable to the plea of laches. As said by Judge Sanborn in Kelley v. Boettcher, 8 Cir., 85 F. 55, 62, and quoted with approval by this court in Fretwell v. Gillette Safety Razor Co., 4 Cir., 106 F.2d 728, 730, 731: "In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. * * * The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. * * * When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

There is nothing in the pleadings or in the evidence showing any special circumstances which would require a holding that suit by the plaintiffs would be barred by anything less than the period of limitations prescribed by statute. There is nothing to show that the beneficiaries of the trust knew of the sale of the remainder interest prior to the death of the holder of the life estate or that the defendants have been prejudiced in any way by the fact that suit was not brought earlier. On the contrary, it appears that an enforcement of the trust at this time will result in nothing more than that the beneficiaries will receive what was intended by the will of testator and what would unquestionably now be theirs if the conveyance by the trustees had not been made.

And we see no merit in the plea of estoppel. As pointed out above, beneficiaries of a trust are not bound by a sale made by trustees in violation of the trust to purchasers who take with knowledge of the violation. It would hardly occur to anyone to suggest an estoppel against the trust if the suit were being prosecuted by other trustees appointed to conserve it; but the fact that two of the three trustees who are plaintiffs joined in the conveyance which they are attacking makes no difference. They are acting as trustees, not as individuals, and it is their duty to preserve the trust estate and recover any property improperly diverted from it, even though they themselves may have participated in the diversion. The rule is thus stated in A. L. I. Restatement of Trusts, 294(c): "c. Suit by trustee. Not only can the beneficiary maintain a suit against a transferee of trust property who is not a bona fide purchaser, but the trustee himself can maintain a suit against the transferee. Although the trustee if he held the property free of the trust would have no cause of action against the transferee, he is permitted to maintain a suit for the benefit of the trust estate. Although the trustee bases his cause of action upon his own voluntary act, and even though the act was knowingly done in breach of his duty to the beneficiary, he is permitted to maintain the action, since the purpose of the action is to recover money or other property for the trust estate, and whatever he recovers he will hold subject to the trust."

The rule is thus stated in First Nat. Bank v. National Broadway Bank, supra, 156 N. Y. 459, 51 N.E. 398, 400, 42 L.R.A. 139, 145: "Any person who receives property knowing that it is the subject of a trust, and that it has been transferred in violation of the duty or power of the trustee, takes it subject to the right, not only of the cestui que trust, but also of the trustee, to reclaim possession of the property."

See, also, Stone v. White, 301 U.S. 532, 302 U.S. 639, 57 S.Ct. 851, 853, 81 L.Ed. 1265, 82 L.Ed. 497, where Mr. Justice Stone said: "But whenever the trustee

brings suit in a court which is free to consider equitable rights and duties, his right to maintain the suit may be enlarged or diminished by reference to the fact that the suit, though maintained in the name of the trustee alone, is for the benefit and in the equitable interest of the cestui. He can sue to set aside his own voluntary conveyance and impeach it as a breach of trust known to the transferee, because the action, brought to recover property for the trust estate, will inure to the advantage of the innocent beneficiary. Wetmore v. Porter, 92 N.Y. 76; Zimmerman v. Kinkle, 108 N. Y. 282, 15 N.E. 407; Atwood v. Lester, 20 R.I. 660, 665, particularly at page 669, 40 A. 866, 868–870; Franco v. Franco, 3 Ves. Jr. 75; American Law Institute Restatement of the Law of Trusts, § 294."

### The Question of Liability.

 The suit is against the executors, as such, against the trustees under the Richardson will and against the Vick Chemical Company, the Delaware corporation, which succeeded to the rights and liabilities of the North Carolina corporation that made on its books the transfer which deprived the trust of the stock in question. Under the North Carolina decisions, there can be no doubt as to the liability of the corporation for the loss thus sustained by the trust. Baker v. Atlantic C. L. R. Co., 173 N.C. 365, 92 S.E. 170, L.R.A.1917E, 266; Wooten v. Wilmington & W. R. Co., 128 N.C. 119, 38 S.E. 298, 56 L.R.A. 615; Cox v. First Nat. Bank of Wilson, 119 N.C. 302, 26 S.E. 22. The corporation is liable, also, on the theory that the stock constituting the trust estate was acquired by a corporation which the defendant corporation has succeeded in a process of corporate reorganization.

 And we think it equally clear that the executors, too, are liable for the value of the stock. As executors, they held it as trustees for those to whom it was devised; they have never delivered it to the trustees of the trust; and, for reasons heretofore stated, they are not protected by the conveyance made by the trustees to the holder of the life interest, who was one of their number. The fact that the executors filed a final account is immaterial. It is well settled that the filing of such account does not discharge them of their trust as to property remaining in their hands. Edwards v. McLawhorn, 218 N.C. 543, 11 S.E. 2d 562; Best v. Best, 161 N.C. 513, 77 S.E.

762; Johnston v. Schwenck, 99 Ohio St. 59, 124 N.E. 61, 8 A.L.R. 170, and note. Only after final account is filed or after the lapse of two years, the time allowed by law for filing it, could a suit for the legacy be maintained. N.C.Code of 1939, sec. 147.

 The executors never delivered the stock certificates to Mrs. Richardson, the holder of the life interest. After the transfers to the children, the executors permitted certificates to be issued in the name of the children by the corporation, taking no steps to protect the remainder devised to the trust, although fully advised of the circumstances under which the conveyance was made by the trustees. The fact that the person taking the conveyances from the trustees was one of the executors, that the other two received transfers of the stock from her and that all were parties to the plan by which the stock was being diverted from the purposes of the trust, means that the transfer amounted to nothing, since all parties were charged with notice that the remainder was subject to the trust just as though the transfers had not been made. As trustees holding the stock for the legatees, the executors can defeat liability only by showing that they properly discharged their trust, and this they are unable to show.

 As we have noted, the decree of the court below requires the defendants to restore to the trust the shares of stock diverted therefrom or their equivalent. The defendants include the trustees of the trusts created by the Richardson will. It does not appear that these trusts participated in or profited from the violation of the trust with which we are here concerned; and consequently the decree should not run against the defendants in their capacity as trustees under the trusts expressly created by the will, and since the executors are not sued in their individual capacities, the decree does not of course run against them as individuals.

### Extent of Liability.

 As to the extent of liability, we think that the court below correctly held that the corporation and the executors are bound to account for all the property in the corpus of the trust in whatever form it may now be. The rule applicable is that stated by Turner, L. J., in Pennell v. Deffell, supra, 4 De Gex M. & G. 372, 378, as follows: "It is an undoubted principle of this court that as between a cestui que

trust and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruits of such property, whether it is in its original or its altered state, continues to be subject to or affected by the trust." And this is the rule approved and followed by the courts of North Carolina, as well as by courts generally. See Wood v. Citizens' Bank, 199 N.C. 371, 154 S.E. 623; Corporation Commission of North Carolina v. Merchants Bank & Trust Co., 193 N.C. 696, 138 S.E. 22; People's National Bank v. Waggoner, 185 N.C. 297, 117 S.E. 6; Edwards v. Culberson, 111 N.C. 342, 16 S.E. 233, 18 L.R.A. 204.

This is undoubtedly the rule to be followed in cases where it is sought to impress a constructive trust on property in possession of a defendant. We see no reason why the same rule should not be followed in a suit to recover a legacy in stock from executors, where it appears that the stock has been converted into other stocks. Whether this is the rule to be followed in measuring the liability of the corporation making the wrongful transfer upon its books, we need not stop to inquire, since the defendant Vick Chemical Company not only assumed the liabilities of the corporation making the transfer but also, through various corporate reorganizations, acquired its rights and assets, including the interest in that corporation represented by its stock subject to the trust.

The decree of the lower court lists certain shares of stock of the defendant Vick Chemical Company and certain shares of stock of other named corporations, and also certain sums of money from preferred stock retirement or liquidation which are held to be the present equivalent of each of the 225 shares of stock of the original corporation with which we are now concerned; and the decree directs that for each of said 225 shares the defendants deliver to the plaintiffs the shares of stock and money so listed. Unquestionably the plaintiffs are entitled to the present equivalent of the 225 shares which constitutes the corpus of the trust while the holders of the life estate of Mrs. Richardson were entitled to the income therefrom until the time of her death on July 16, 1940. During the existence of the life estate, there were a number of corporate changes and reorganizations accompanied by new stock issues and distributions in cash and the allotments thereof attributable to the 225 shares were all made to the transferees who received this stock from Mrs. Richardson in 1923. During this period large profits were being realized and the control of the various corporations remained in the original stockholders. In determining what part of these allotments should have gone to the owners of the life estate and what to the corpus of the trust we must apply the law of North Carolina which follows the Massachusetts rule in this regard. See Humphrey v. Lang, 169 N.C. 601, 86 S.E. 526, L.R.A.1916B, 626; see, also, the discussion in 130 A.L.R. 492. But we have difficulty in ascertaining whether this rule has been followed in this case because the distributions of stock and money and the history of the corporate reorganizations and transfers are not set out with sufficient definiteness in the findings of the court. We are therefore unable to determine with certainty what part of the distribution of stock and money rightfully belonged to the life estate and what part to the corpus of the trust. Moreover, the matter has not been sufficiently discussed in the briefs of counsel who were primarily interested in the basic question of liability.

The question remains as to the correctness of permitting the deduction from the recovery of the $45,000 received by the trustees from Mrs. Richardson with interest thereon from its receipt. The payment to the trustees were not used for the purposes of the trust, but was diverted to other purposes, viz., the building of a new church and the payment of a subscription by the Richardson family to Davidson College; and, as heretofore stated, the persons making the payment knew at the time that it was to be thus diverted. The trust certainly cannot be charged with the payment made to the trustees under such circumstances. It is true that ordinarily a purchaser from a trustee is not required to look to the application of the purchase money to the purposes of the trust; but this rule has no application where the purchaser knows at the time of purchase "of the trustee's violation of trust, committed or intended". 65 C.J. 782-783; Leake v. Watson, 58 Conn. 332, 20 A. 343, 8 L.R.A. 666, 18 Am.St.Rep. 270; Tapley v. Tapley, 115 Ga. 109, 41 S.E. 235; Walker v. Quigg,

6 Watts, Pa., 87, 31 Am.Dec. 452. The rule applicable is thus stated in A. L. I. Restatement of Trusts 291 (*o*): "*o*. Credit for purchase price. If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust and who pays value for the trust property, and the beneficiary compels him to restore the property to the trust or to account for its value or for the proceeds, the transferee is entitled to credit for the amount which he paid for the trust property to the extent to which the trust estate has the benefit thereof. If, however, the purchase price has been misappropriated by the trustee and the trust estate has therefore not received a benefit therefrom, the transferee is not entitled to credit therefor."

For the reasons stated the decree appealed from will be affirmed as to the liability of the corporate defendant and of the executors under the will and will be reversed as to the liability of the trustees under the will and as to the deduction of the $45,000 received by the trustees from Mrs. Richardson and will be remanded for further proceedings with respect to the extent of liability, with leave to the parties to take additional testimony if they so desire.

Affirmed in part, reversed in part and remanded.

SOPER, Circuit Judge (dissenting).

Existence of Trust.

If careful consideration is given to all the relevant provisions of the Richardson will for the purpose of determining whether the testator intended to create a trust for the benevolent causes of the church, it is seen at once that neither the language of the will nor the circumstances satisfy the rule that an intention to create a trust must be shown with at least reasonable certainty. The fifth paragraph of the will, quoted in the opinion of the court, bequeaths an eight one-hundredths interest in the Vick Chemical Company to the testator's wife and then contains the following disposition: "At the death of my said wife it is my desire that of the said eight one-hundredths interest so devised to her, three one-hundredths thereof shall be and become absolutely the property of the Trustees of the First Presbyterian Church, and the profits or dividends arising therefrom shall be used by the said trustees for the benefit of Home and Foreign Missions and the benevolent causes of the church, in such proportion as the Trustees deem best."

Only one phrase in this bequest indicates in any way that a trust is intended, that is, the words "in such proportion as the trustees deem best"; but the effect of this phrase is much weakened when it is known that under the North Carolina Code, §§ 3568–3571, the legal title of church property is held by trustees subject to the control of the church. The bequest to the trustees of the church in this case was therefore in effect a bequest to the church, as the testator, who was very familiar with the organization of the Presbyterian Church, well knew. The direction to use the income for the benevolent causes of the church did not of itself establish a trust, for it is settled in North Carolina and elsewhere that a bequest to a charitable corporation to use the income for corporate purposes creates an absolute gift and not a gift in trust. St. James Parish v. Bagley, 138 N.C. 384, 50 S.E. 841, 70 L.R.A. 160; Williams v. Thompson, 216 N.C. 292, 4 S.E. 2d 609; Art Students' League v. Hinkley, D.C., 31 F.2d 469; Hinkley v. Art Students' League, 4 Cir., 37 F.2d 225, and cases cited.

The direction that the income be used for the benevolent causes of the church in such proportion as the trustees deem best, if taken alone, seems to confer discretionary powers upon the trustees; but, as a practical matter, it means much the same as a direction to the church to distribute the income as it deems best; for the trustees, as representatives of the church and custodians of its property, would be expected to follow the wishes of the church in accordance with the state statutes. Actually the trustees did so with respect to the very sale of stock now under consideration, for although in their individual capacities they were among the most successful and competent men in the community, they regarded themselves bound to follow the will of the church in the disposition of the stock.

Offsetting any argument in favor of the trust relationship based upon the apparent discretion of the church trustees, is the explicit direction that the stock should "be and become *absolutely* the property of the trustees", &c. One does not give property to another absolutely when one intends to give it to him as trustee. The use of the phrase "trustees of the First Presbyterian Church" merely identified the persons who

held the legal title to the church property and signified that the church was the object of the testator's bounty.

The testator knew the kind of language to use when he desired to set up a trust, as in the eighth and ninth paragraphs of the will where he said:

"Eighth. I give and bequeath all of my real estate, stocks, bonds and money of which I may die seized and possessed (Other than the bequests hereinbefore named) to my sons, J. H. S. Richardson and Lunsford Richardson, Jr., and my wife, Mary Lynn Richardson, in trust for my wife during her life. All of the rents, profits and income annually arising from this portion of my estate shall be by the said trustees turned over to my said wife, Mary Lynn Richardson, to her sole use and benefit, and to so continue until her death, without any accounting on her part."

"Ninth. Upon the death of my said wife it is my wish and desire, and I hereby direct my said Trustees to distribute all of my real estate, stocks, bonds, mortgages, etc. herein placed under their charge equally among my children hereinbefore named, share and share alike. In the event of the death of any child or children, then his or her share shall descend as provided for in paragraph six above."

No one interested in the establishment of a trust in this case satisfactorily explains why the testator did not use language of the same unmistakable clarity in the fifth paragraph of the same document, if there also he intended to leave property in trust and not to make an absolute gift. In case of doubt it is obligatory to examine the whole instrument, as Judge Connor pointed out in St. James Parish v. Bagley, 138 N.C. 384, 50 S.E. 841, 70 L.R.A. 160, where property was conveyed to a church for its charitable objects. He said (page 389 of 138 N.C., page 842 of 50 S.E., 70 L.R.A. 160): "It must be conceded that it is not necessary for the valid declaration of a trust that any peculiar language be used. Bispham Eq. 71. When it is doubtful whether language in the grant operates as the declaration of trust, the court will examine the entire deed, the relation of the parties, etc., to enable it to gather the intention of the grantor. The effect of a deed must depend upon the effect of the language used. A grantor can impose conditions, and can make the title conveyed dependent upon their performance. But if he does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words cannot be controlled by the language indicating the grantor's motive.'"

Very close to the case at bar are the facts disclosed in Williams v. Thompson, 216 N.C. 292, 4 S.E.2d 609, wherein the court again set out the principles to be applied when the question arises whether property devised to a church for one of its purposes was given to it absolutely or in trust. The testator left a residence property to his niece for life and then provided: " * * * After her death I give and bequeath the said lot with all improvements and hereditaments to the Methodist Episcopal Church in this place, to be used by the stewards or legal representatives of the said Church in the Town of Plymouth as a parsonage for the minister and for no other purpose, in order to secure the possession of my burying ground to the aforesaid Church and to its keeping and care."

The life tenant conveyed her life estate to another, and a few days later the trustees of the church conveyed to him the remainder and subsequently his heirs contracted to convey the land in fee to a purchaser. The question arose whether the language of the will had the effect of impressing a trust upon the land for use as a parsonage so as to restrict its alienation by the church. It was held that the church took an absolute estate in the remainder under the rule stated as follows in Pomeroy's Equity, § 1016: "In order that a trust may arise from the use of precatory words, the court must be satisfied from the words themselves, taken in connection with all the other terms in the disposition, that the testator's intention to create an express trust was as full, complete, settled and sure as though he had given the property to hold upon a trust declared in express terms in the ordinary manner."

There is no legal distinction between a gift of property to be used for the benevolent causes of a church and of property to be used for a parsonage, for both are within the corporate purposes. It was doubtless in view of this fact and of the established state law that competent counsel, learned in the law of North Carolina, advised the church in 1923 that the sale of the stock by the church was within its rights. The decisions of the highest court of North Carolina should govern us in this case.

## Limitations.

Even if a trust was created by the will, the North Carolina statutes of limitations (Consolidated Statutes §§ 441, 445), present a complete defense to this suit; and the circumstances of the case dissipate the usual reluctance of a court to rest its decision on this ground. Express power to sell the shares of stock was given by the seventh paragraph of the will to all of the legatees of the testator's interest in the Chemical Company, including the trustees of the church. The transfer in this case was made quite publicly, after an open discussion in a meeting of the congregation, and was known to literally hundreds of people, including, beyond doubt, those members of the local church especially devoted to its benevolent causes. There was a complete absence of concealment or fraud, as the District Judge correctly held. The members of the Richardson family were devoted to the church, as Mrs. Richardson's father and one of her brothers had been its ministers. During the period subsequent to the transfer of 1923, the family's gifts to the local church totaled one million dollars. Under these circumstances the persistence of the plaintiffs in this case, who are the present trustees of the local church, and certain benevolent corporations affiliated with the Presbyterian denomination, in returning to the charge of fraud in this court is, to say the least, incomprehensible.

But it is said that limitations did not begin to run until the life estate of Mrs. Richardson terminated with her death in 1940, less than three years before the institution of the suit, because under the North Carolina decisions a remainderman is not entitled to possession until the death of the life tenant, and is therefore under no legal obligation to sue at an earlier date, although he has the right to invoke the aid of the court at any time to prevent or remedy a violation of the trust. See, Wooten v. Wilmington & W. R. Co., 128 N.C. 119, 38 S.E. 298, 56 L.R.A. 615; Joyner v. Futrell, 136 N.C. 301, 48 S.E. 649; Baker v. Atlantic C. L. R. Co., 173 N.C. 365, 92 S. E. 170, L.R.A.1917E, 266; Pritchard v. Williams, 175 N.C. 319, 95 S.E. 570; Baggett v. Lanier, 178 N.C. 129, 100 S.E. 254.

This argument, however, ignores the patent fact that Mrs. Richardson voluntarily put an end to her life estate in 1923 when she and the trustees, as they had the power to do under the will, joined in a conveyance of the stock to her children intending to give them an absolute title. In practical effect, Mrs. Richardson gave her life estate to the church for she gave it the entire proceeds of sale. It is true that the transaction took the form of a conveyance of the church's remainder interest to Mrs. Richardson, followed by a conveyance by her of the entire interest in the stock to the purchasers; but can it be said that the legal result would have been different if she had first transferred her life estate to the church and it had then transferred the stock to the purchasers, or if Mrs. Richardson and the church had joined in a single instrument of assignment? To ask this question is to expose the artificial character of the reply to the plea of limitations. There is no need to appeal to the technical rules of merger, primarily applicable to real property, when the owners of both estates intend to unite them in one person and, with power to do so, take effectual steps to that end. If the transfer of the stock and the disposition of the proceeds of sale constituted a breach of trust and gave rise to a constructive trust impressed upon the stock in the hands of the purchasers, it took place in 1923 when they acquired it and the purchase price was used to aid in the building of a new church; and limitations began to run in that year.

## Limitations as to the Executors.

So far as the defendant executors are concerned, the defense of limitations rests upon the North Carolina statutes as interpreted in Edwards v. Lemmond, 136 N.C. 329, 48 S.E. 737. In that case the court decided that under § 1488 (now § 150) of the North Carolina Code an executor is forbidden to hold after two years from his qualification more of the estate than amounts to his necessary charges; and that § 1402 (now § 109) of the Code affords any one interested in the estate a right to compel a final settlement in two years; and that under § 158 (now § 445) of the Code, an action for relief against an executor must be filed within ten years after the action accrues. The court said that at the end of two years the law makes the demand and puts an end to the express trust, although no express demand is made by any interested party upon the executor in default, and an action will then lie at the instance of any one entitled to a settlement of the estate.

It is not sufficient to say in answer to this decision that Mrs. Richardson did not die until 1940. Even if we assume that her

life estate did not terminate and the church was not entitled to possession of the stock until her death, a right of action for the distribution of the estate accrued to the remaindermen at the end of two years after the executors qualified. The church then had the right to demand that the three hundredths interest of the testator in the Chemical Company be segregated from his estate by a transfer of the stock evidenced by the issuance of a stock certificate to Mrs. Richardson as life tenant with remainder to the church. This right accrued to the church as well as to Mrs. Richardson, and the latter's right of possession of the stock during her life in no way qualified the duty of the executors to divest themselves of all interest in the stock so as to comply with the purpose of the North Carolina statutes that the estate of a decedent be finally distributed within two years.